Gregory BARILLARI and Margaret Flanagan-Wilkie, Parents of Shannon Barillari, Margaret Flanagan-Wilkie, as Special Administrator of the Estate of Shannon Barillari, Erin Barillari, Sal Barillari and Dominic Barillari, Minors, by their Guardian ad Litem, Joseph J. Welcenbach, Plaintiffs-Appellants,

v.

CITY OF MILWAUKEE, Defendant-Respondent.†

Court of Appeals

*No. 93–1334. Submitted on briefs January 4, 1994.—Decided July 19, 1994.*

(Also reported in 521 N.W.2d 144.)

†Petition to review granted.

415

For the plaintiffs-appellants the cause was submitted on the briefs of *Joseph J. Welcenbach* and *Margaret A. Watt* of *Welcenbach & Widmann of Wauwatosa.*

For the defendant-respondent the cause was submitted on the briefs of *Grant F. Langley*, city attorney, and *Rudolph M. Konrad*, deputy city attorney, of Milwaukee.

Before Sullivan, Fine and Schudson, JJ.

SULLIVAN, J.   The plaintiffs appeal from a judgment dismissing their wrongful death complaint against the City of Milwaukee.[1] The plaintiffs are the parents, two minor siblings by their guardian ad litem,

---

[1] The complaint included a cause of action for violation of Barillari's civil rights protected by 42 U.S.C. 1983. Upon removal to the Federal District Court, that action was summarily dismissed and the case remanded to the circuit court for determination of the wrongful death action.

one adult sibling, and the personal representative of the decedent, Shannon Barillari. The trial court granted the City's motion for summary judgment on the basis of governmental immunity. The plaintiffs appeal. We conclude that the complaint stated a claim for which relief could be granted. Thus, we reverse.

The plaintiffs' complaint charged the City with negligence and alleged the following facts. On July 29, 1987, Charles Estergard beat his eighteen-year old girlfriend Shannon Barillari and sexually assaulted her at knifepoint. The next day, Barillari and her mother reported the assault to the police and informed them that Estergard had been acting bizarrely and had threatened to kill Barillari and himself. The complaint further alleged that the police promised to protect Barillari and told Barillari and her mother that they would arrest Estergard. According to the complaint, Barillari also informed the police that Estergard would be at her home at 3:30 p.m. on July 30. The complaint also alleges that the police never encountered nor arrested Estergard after the reported sexual assault.[2] On August 4, 1987, Estergard took Barillari hostage, shot her to death, and committed suicide. The complaint charges the City with negligence and alleges that City of Milwaukee police officers failed to protect Barillari as promised, failed to arrest Estergard, and failed to inform Barillari that they had not arrested him.

Based upon the allegations in the complaint, the City moved for summary judgment, arguing that it had

---

[2] The complaint does not explain whether police or Estergard ever came to Barillari's home on the afternoon of July 30th. Other information in the appellate record shows that both Estergard and the police came to the home on the afternoon of July 30, although they did not encounter one another.

immunity under § 893.80(4), STATS. The trial court, in its written decision, applied immunity, concluded that the complaint failed to state a claim, and granted summary judgment to the City. The plaintiffs claim that the trial court erred in this determination. We agree.

Summary judgment "shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Section 802.08(2), STATS. We review a trial court's grant of summary judgment independently and accord no deference to the reasoning of the trial court. *See C.L. v. Olson*, 143 Wis. 2d 701, 706, 422 N.W.2d 614, 615 (1988).

The first step in the summary judgment procedure is to determine whether the complaint states a claim for which relief can be granted. *Id.* "Because the pleadings are to be liberally construed, a claim should be dismissed as legally insufficient only if 'it is quite clear that under no conditions can the plaintiff recover.'" *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 731, 275 N.W.2d 660, 664 (1979) (citation omitted). Whether a complaint states a claim is a question of law that we decide independently of the trial court's determination. *See Williams v. Security Sav. & Loan Ass'n*, 120 Wis. 2d 480, 482, 355 N.W.2d 370, 372 (Ct. App. 1984).

"The objection of an officer's civil immunity, affecting as it does his substantive liability for damages, is properly presented by a demurrer on the ground that the complaint fails to state a cause of action." *Lister v. Board of Regents*, 72 Wis. 2d 282, 299, 240 N.W.2d 610,

621 (1976); *see also C.L.*, 143 Wis. 2d at 706, 422 N.W.2d at 615; *Sheridan v. City of Janesville*, 164 Wis. 2d 420, 424, 474 N.W.2d 799, 801 (Ct. App. 1991). The trial court granted summary judgment to the City because it concluded that under § 893.80(4), STATS., the City had immunity, and thus, the complaint failed to state a claim for which relief could be granted. Section 893.80(4) provides:

> No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

If a public official's challenged conduct was ministerial, the doctrine of immunity affords no protection; thus, under § 893.80(4), STATS., a complaint states a claim if it raises an issue as to whether the official's duty was ministerial, rather than quasi-judicial or quasi-legislative. *See C.L.*, 143 Wis. 2d at 710-11, 422 N.W.2d at 617.[3] "As applied, the terms 'quasi-judicial or quasi-legislative' and 'discretionary' are synonymous . . . ." *Lifer v. Raymond*, 80 Wis. 2d 503, 512, 259

---

[3] In *C.L. v. Olson*, the court noted that the common law discretionary analysis is "essentially equivalent" to the immunity provided by § 893.80(4), STATS.; therefore, the analysis applicable to statutory immunity applies with equal force to decisions involving common law immunity. *C.L. v. Olson*, 143 Wis. 2d 701, 716 n.9, 422 N.W.2d 614, 619 n.9 (1988).

N.W.2d 537, 542 (1977). A duty can be ministerial because it is "absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister*, 72 Wis. 2d at 301, 240 N.W.2d at 622. A ministerial duty can also arise under circumstances where "the nature of the danger is compelling and known to the officer and is of such force that the public officer has no discretion not to act." *C.L.*, 143 Wis. 2d at 715, 422 N.W.2d at 619.

In the present case, the complaint alleges that the police officers had assumed a duty to protect Barillari and had failed to locate and arrest Estergard within the six days after the reported sexual assault. The plaintiffs argue that because such a great potential for danger existed, the officers' actions could not be fairly characterized as discretionary. In other words, the plaintiffs contend that the situation was one in which the danger was so compelling, was known to the officers, and was of such force that, given their promise to protect Barillari, the officers had no discretion *not* to act.

In *Cords v. Anderson,* 80 Wis. 2d 525, 538-42, 259 N.W.2d 672, 678-80 (1977), the Wisconsin Supreme Court held that the immunity defense was unavailable to a state park manager where the manager's duty was so clear and absolute under the circumstances as to fall within the definition of a ministerial duty. In *Cords,* the state park manager had failed to either notify his superiors of a hazardous condition on a trail or erect signs warning of the hazard. *Id.* at 542, 259 N.W.2d at 680. The court explained that the manager knew of the

421

danger, had the authority to act, and failed to act. *Id.* at 541, 259 N.W.2d at 680.

We perceive fundamental differences between *Cords* and the present case. In *Cords*, the danger was very apparent—the hazard was an 80-foot drop just inches from the edge of a public trail that was used during daylight hours and also at night. *Id.* at 532, 259 N.W.2d at 675. The fact that a serious accident could happen at any moment was easily foreseeable and there could be no dispute that an unmarked 80-foot drop was an extremely dangerous condition. The testimony was that "one misstep of a foot . . . would cause an uninterrupted twenty foot slide down a sharp incline to a direct dropoff of approximately eighty feet to the rock bottom of the gorge." *Id.* The supreme court has explained that, in *Cords*, the officer knew of an "imminent danger" that was "of such force as to leave nothing to the discretion of the officer." *C.L.*, 143 Wis. 2d at 723, 422 N.W.2d at 622.

Similarly, in *Domino v. Walworth County*, 118 Wis. 2d 488, 490, 347 N.W.2d 917, 918-19 (Ct. App. 1984), a dispatcher for the county sheriff's department dispatched a squad to a downed tree across a road and then diverted the squad elsewhere without reassigning anyone to follow up on the downed tree. *Id.* We concluded that the dispatcher violated a ministerial duty. *Id.* at 491, 347 N.W.2d at 919. Although the dispatcher's duty at certain times was discretionary, the circumstances indicated that the duty to respond to the fallen tree was so clear and absolute that it fell within the concept of a ministerial duty. *Id.*

In the present case, however, the potential danger was not predictable and was far from certain. Unlike the 80-foot drop in *Cords*, or the tree lying across a roadway in *Domino*, the police in this case could not

look at this situation and see a homicide just waiting to happen. Complaints of sexual assault and threats are, unfortunately, not rare in interspousal and boyfriend-girlfriend relationships.[4] Nevertheless, as tragic and horrifying as these crimes are, the situations do not always lead to an immediately dangerous escalation of violence to the point of homicide.

Our analysis does not end here, however. In this case, the plaintiffs alleged more than just the fact that police knew of a dangerous situation and failed to act. The plaintiffs allege that the police, once informed of the dangerous situation, promised protection for Barillari and promised to arrest Estergard.[5] It is that alleged promise of protection and arrest, under the circumstances of this case, that establishes the sufficiency of this complaint.

We are persuaded by *Losinski v. County of Trempealeau*, 946 F.2d 544 (7th Cir. 1991). *Losinski*

---

[4] Over 24,000 incidents of domestic abuse were reported in seventy Wisconsin counties in 1991. WISCONSIN DEPARTMENT OF JUSTICE—OFFICE OF CRIME VICTIM SERVICES, DOMESTIC ABUSE INCIDENT REPORT: 1990 & 1991, at 5 (1993). Additionally, 24% of all Wisconsin homicides in 1991 were domestic-abuse related. *Id.*

[5] The following paragraphs of the complaint allege a promise by police:

8. That thereafter up until August 4, 1987, the defendant's police officers promised both the decedent and the decedent's mother that adequate protection would be given to Shannon Barillari and they specifically indicated that they would arrest Charles Estergard and otherwise specifically promised to protect Shannon Barillari.

9. That the decedent specifically told the police officers that Charles Estergard had notified her that he would be coming to her home at 3:30 on July 30, 1987; that in spite of that fact the police department failed to arrest or otherwise apprehend Charles Estergard.

involved the murder of a wife by her husband in the presence of an officer. The officer was accompanying the wife for the specific purpose of protecting her from her husband. *Id.* at 547. The wife had a temporary restraining order against her husband, and with permission of the family court, she was to go to the parties' trailer home to gather certain personal belongings. *Id.* The wife requested and was assigned a deputy to protect her on her visit to the home. *Id.* The officer met the wife near the home and was aware of the restraining order but permitted the wife to enter the trailer alone with her husband. *Id.* at 547. After hearing abusive language, the deputy entered the trailer but did not interfere with the argument or separate the parties. *Id.* at 547-48. He stood outside the bedroom until the argument culminated in the fatal shooting. *Id.* at 548. The Seventh Circuit Court of Appeals decided that the officer was not entitled to immunity under Wisconsin law. The court explained:

> Once [the officer] assumed the duty to protect, his obligation was no longer discretionary. . . . He could not, for example, have abandoned [the wife] at the house after encountering [the husband] and claim that he was entitled to do so because of discretion. *Once the deputy acted, the discretion that may otherwise attach to his position diminished.* The deputy therefore was not entitled to immunity for the decisions he made at the Losinski's trailer home.

*Id.* at 554 (emphasis added).

Here, the plaintiffs' complaint alleged that the detectives had promised to protect Barillari and arrest Estergard. We conclude that once the detectives made the alleged promise, the discretion that may otherwise

attach to their position dwindled. The detectives retained a certain measure of discretion as to *how* best to fulfill the promise, for example: how many officers were needed, whether the officers should be uniformed or plain-clothes, whether they should be placed inside or outside of the house, etc. What was no longer discretionary, however, was their fulfillment of that promise. Thus, the detectives' obligation was co-extensive with their promise. For example, if the police had promised, "We will protect you by having two officers in your home at all times until Estergard is arrested," their discretion would diminish accordingly. Consequently, we conclude that the complaint was sufficient under *Losinski* to allege that the police had assumed a duty to act such that statutory immunity does not bar the claim.

■

The summary judgment materials exhibit that issues of disputed material fact exist. We note, for example, that in her deposition, Rosemary Theis, Barillari's neighbor, related that the police told her and the victim "that they would be there to make sure that they picked him up. They totally assured us that we had no worries, none whatsoever, that he would be picked up at least for questioning." This sufficiently raises a genuine issue of fact as to whether the officers assumed a duty to arrest Estergard in order to prevent the threatened harm. Thus, questions remain for the jury: did the police, in fact, make a promise; if so, what were its reasonably understood terms; and did the police fulfill their promise? These questions can only be resolved at trial. Therefore, because we conclude that the plaintiff's complaint was sufficient to state a claim and that, additionally, material facts remain in dis-

pute, we must reverse the summary judgment and remand for further proceedings.

*By the Court.*—Judgment reversed and cause remanded for proceedings consistent with this opinion.