Gregory BARILLARI and Margaret Flanagan-Wilkie,
Parents of Shannon Barillari, Margaret Flanagan-
Wilkie, as Special Administrator of the Estate of
Shannon Barillari, Erin Barillari, Sal Barillari and
Dominic Barillari, Minors, by their Guardian ad
Litem, Joseph J. Welcenbach, Plaintiffs-Appellants,

v.

CITY OF MILWAUKEE, Defendant-Respondent-Petitioner.

Supreme Court

*No. 93–1334. Oral argument May 24, 1995.—Decided June 26,
1995.*

(Also reported in 533 N.W.2d 759.)

247

For the defendant-respondent-petitioner there was a brief and argument by *Grant F. Langley,* city attorney.

For the plaintiffs-appellants there was a brief by *Joseph J. Welcenbach, Margaret A. Watt* and *Welcenbach & Widmann, S.C.,* Milwaukee and oral argument by *Joseph J. Welcenbach.*

JANINE P. GESKE, J. The petitioner, the City of Milwaukee (the City), requests review of a published decision of the court of appeals, *Barillari v. Milwaukee,* 186 Wis. 2d 415, 521 N.W.2d 144 (Ct. App. 1994), reversing a judgment of the Circuit Court for Milwaukee County, William D. Gardner, Circuit Judge. The circuit court, on summary judgment, dismissed an action against the City for the wrongful death of Shannon Barillari (Shannon). The action arose out of an incident in which Shannon was killed by her ex-boyfriend, Charles Estergard (Estergard), who then committed suicide. Shannon's parents, her estate, and her siblings (the Barillaris) filed suit against the City, claiming that the City, through the police department and two of its detectives, was negligent in failing to (a) apprehend and arrest Estergard or (b) otherwise notify Shannon and her mother that he had not been arrested. According to the Barillaris, once the detectives gave assurances that certain actions would be taken to apprehend Estergard, their discretionary acts, for which they enjoyed immunity from liability, were transformed to ministerial duties, to which no immunity attached.

The Barillaris originally filed their complaint against the City in the Circuit Court for Milwaukee County. The action was thereafter removed to federal court where the City sought summary judgment dismissing the complaint in an action brought pursuant to 42 U.S.C. § 1983. The federal district court summarily dismissed the plaintiffs' civil rights claim and remanded the case to the state court for resolution of the state law claim of negligence. The circuit court granted the City's motion for summary judgment of dismissal, finding that the complaint did not state a cause of action. Specifically, the circuit court stated

that the conduct complained of constituted discretionary acts during the investigation of a case, acts which are immune from liability under § 893.80(4), Stats.

The court of appeals reversed the decision of the circuit court and held that statutory immunity did not bar the Barillaris' claim because the detectives' assurances of protecting Shannon by arresting Estergard transformed the discretion associated with their official position into a ministerial duty, for which there was no immunity. For the reasons set forth below, we now reverse the decision of the court of appeals and hold that the police detectives' "promise" to apprehend and arrest Estergard for the alleged sexual assault of Shannon or otherwise notify Shannon and her mother that he had not been arrested did not transform the character of their discretionary acts during the investigation of the case into ministerial duties.

The facts before the circuit court at the summary judgment hearing were as follows. On Thursday, July 30, 1987, Shannon filed a report with the Milwaukee Police Department, stating that she had been sexually assaulted by Estergard. Shannon dated Estergard for more than two years. In July 1987, she tried to end their relationship. Estergard responded by threatening to commit suicide. When Shannon made one last attempt to end the relationship on July 29, Estergard sexually assaulted her at knife point, threatening to kill her and himself. Attempting to avoid further harm, Shannon told Estergard that she would move in with him and that he should pick her up at her mother's house on July 30 at 3:30 p.m. Shannon informed her mother and sister of the assault on the morning of July 30 and then went to the hospital for an examination. While at the hospital, two Milwaukee police detectives, Raymond Stanczyck (Stanczyck) and Duane Luick

(Luick), interviewed Shannon. The police also took photographs of Shannon's injuries to provide evidence for criminal charges against Estergard.

The Barillaris state that after the interview was concluded, Shannon's mother told the police that she feared Estergard would once again harm Shannon. The Barillaris also claim that Luick promised that Estergard would not get near Shannon because the police department would (1) immediately obtain a warrant for his arrest and (2) be at Shannon's home at 3:30 p.m. that day to arrest Estergard.

Luick did issue an apprehension request for Estergard on July 30, giving the police department the necessary authority to arrest.[1] Additionally, Luick advised Shannon to follow up on the prosecution of the matter because Estergard might try to assault her again. Finally, Luick recommended that Shannon meet with someone from the district attorney's office, Sensitive Crimes Unit, on Friday, July 31, to initiate the prosecution of Estergard. After this interview, Luick did not have any further contact with Shannon or her family.

During the interview at the hospital, Stanczyck also advised Shannon and her family to file a sexual assault complaint against Estergard in order to pre-

---

[1] An apprehension order, issued in the form of a teletype message containing the physical description and address of the individual in question, requests police officers to be on the lookout for the subject of the order. In this case, the order included Estergard's physical description, address, make of car, and the fact that he was wanted for first-degree sexual assault. If located, Estergard was to be picked up. This order is to be distinguished from a warrant which, when completed, is filed in the computer system, authorizing the actual arrest of the individual in question.

vent him from having any further harmful contact with her. He then contacted the police department, requesting that a squad be sent to Shannon's home at 3:30 on July 30 to arrest Estergard. The police, however, did not have contact with Estergard at that time. On Friday, July 31, Stanczyck briefly met with Shannon and her mother at the district attorney's office. Rather than seeking an arrest warrant, the assistant district attorney decided to give Estergard a few days to voluntarily turn himself in to the police. The assistant district attorney told Stanczyck that if Estergard did not voluntarily surrender by the beginning of the following week, Stanczyck should return to the office to obtain a warrant for Estergard's arrest.

Estergard did not turn himself in to police. On Tuesday, August 4, 1987, he went to Shannon's home. He first killed Shannon and then himself with a gun he purchased over the weekend.

According to the complaint[2] filed by Shannon's family following her death, the City, through its police department and officers, was negligent, *inter alia,*

---

[2] The complaint filed by the Barillaris on November 7, 1988, sought damages for the wrongful death of Shannon Barillari under § 895.04, Stats., and under the Fourteenth Amendment to the United States Constitution and the laws of the United States, including the Civil Rights Act found in Title 42 U.S.C. § 1983. The federal action was dismissed by the United States District Court for the Eastern District of Wisconsin on June 22, 1990, Terence T. Evans, United States District Judge. In dismissing the Barillaris' civil rights claim, the court relied on the United States Supreme Court's decision in *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189 (1989), which held that Winnebago County social workers did not violate the Fourteenth Amendment rights of a child they failed to protect from abuse, even though they knew that the child's father was abusing him. The district court, however, remanded the instant

because the detectives failed to fulfill their promise to apprehend and arrest Estergard or to otherwise notify Shannon and her mother that he had not been arrested. Further, according to the complaint, Shannon and her family relied upon police assurances and canceled plans to leave the Milwaukee area so that Shannon could avoid threats and physical violence from Estergard.

The City filed a motion for summary judgment pursuant to § 802.08, Stats.,[3] claiming that the Barillaris' complaint failed to state a claim for relief because the City and its employees are immune from liability under § 893.80(4), Stats.[4] The circuit court granted the

---

case to the Milwaukee County circuit court for consideration of the state law claim of negligence.

[3] Section 802.08(2), Stats., provides in pertinent part:

**802.08 Summary Judgment.** ...

**(2)** *Motion.* ... The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

[4] Section 893.80(4), Stats., provides:

**893.80 Claims against governmental bodies or officers, agents or employes; notice of injury; limitation of damages and suits.** ...

 . . .

**(4)** No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

motion, holding that (1) the complaint did not state a cause of action; (2) the conduct complained of implicated only the discretionary acts of police during their investigation of the case; (3) discretionary acts by the police are immune from liability, under § 893.80(4), Stats.; and (4) absent compelling and immediate danger, with evidence that the police officer had the opportunity to act, the officer should not face a lawsuit regarding his or her actions while conducting an investigation of a case.

The court of appeals reversed the decision of the circuit court and held that summary judgment was not warranted in this case because the "alleged promise of protection and arrest . . . [established] the sufficiency of [the] complaint," *Barillari,* 186 Wis. 2d at 423, and that a jury must decide whether "the police, in fact, [made] a promise; if so, what were its reasonably understood terms; and did the police fulfill their promise?" *Id.* at 425. According to the court of appeals, if the detectives gave assurances that they would protect Shannon, the discretion which might otherwise have been associated with their official position dwindled. *Id.* at 424–25. Thus, the court concluded, statutory immunity did not bar the Barillaris' claim.

The issue before this court is whether a "promise" made by a police officer to protect a crime victim from further harm deprives the officer of immunity from liability for discretionary acts to which the officer would be otherwise entitled under § 893.80(4), Stats. We reverse the decision of the court of appeals and hold that the police detectives' "promise" to apprehend and arrest Estergard for the alleged sexual assault of Shannon or to otherwise notify Shannon and her mother that he had not been arrested did not transform the

255

character of their discretionary acts during the investigation of the case to ministerial duties.

We review a court's decision to grant or deny summary judgment *de novo. Burkes v. Klauser,* 185 Wis. 2d 308, 327, 517 N.W.2d 503 (1994); *see also Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). The first step in a summary judgment procedure is for the court to determine whether the complaint states a claim for which relief can be granted. *Green Spring Farms,* 136 Wis. 2d at 315. A complaint "should be dismissed as legally insufficient only if it is quite clear that under no circumstances can plaintiffs recover." *Id.* at 317.

## BECAUSE THE CITY ENJOYS IMMUNITY FROM LIABILITY PURSUANT TO § 893.80(4), STATS., THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION, AND SUMMARY JUDGMENT IS PROPER IN THIS CASE

The City argues that summary judgment is warranted in this case because the Barillaris fail to state a claim for relief. Without conceding that any promises were made by Detectives Luick and Stanczyck, the City contends that (a) police conduct during the investigation of Shannon's case was discretionary and requires immunity under § 893.80(4), Stats.; (b) even if assurances were given to Shannon and her mother, they were not of a specific nature so as to constitute a ministerial duty; thus, police retained the discretion as to their implementation; and (c) public policy requires that police be provided with discretion to conduct an investigation of a case without fearing liability for consoling the victim of a crime.

The Barillaris argue that, under the facts of this case, statutory immunity does not bar their claim. First, the Barillaris claim that Detectives Luick and Stanczyck made a general promise to protect Shannon by apprehending and arresting Estergard and, more specifically, promised to send police to Shannon's house at 3:30 p.m. on July 30 to arrest him. They also allege that the detectives promised to notify Shannon if Estergard was not arrested. These specific assurances, according to the Barillaris, constitute ministerial duties for which there is no immunity. Second, even if the promises are not considered to be ministerial in nature, the Barillaris contend that Estergard posed a known and compelling danger, of which the detectives were aware; accordingly, an exception to the general rule of immunity existed.

"The general rule acknowledged in Wisconsin is that a public officer or employee is immune from personal liability for injuries resulting from acts performed within the scope of the individual's public office." *C.L. v. Olson,* 143 Wis. 2d 701, 710, 422 N.W.2d 614 (1988) (citing *Lister v. Board of Regents,* 72 Wis. 2d 282, 300, 240 N.W.2d 610 (1976)). Section 893.80(4), Stats., provides immunity from liability for the discretionary acts of public officers or employees.

Three exceptions exist, however, to this general rule of immunity. First, a public officer or employee does not enjoy immunity if he or she engages in conduct which is malicious, willful, and intentional. *Olson,* 143 Wis. 2d at 711 (citing *Ibrahim v. Samore,* 118 Wis. 2d 720, 728, 348 N.W.2d 554 (1984)).

Second, a public officer or employee is not immune from liability if he or she negligently performs a ministerial duty. " 'A public officer's duty is ministerial only

when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.' " *Olson,* 143 Wis. 2d at 711–12 (quoting *Lister,* 72 Wis. 2d at 301). For example, in *Domino v. Walworth County,* 118 Wis. 2d 488, 490, 492–93, 347 N.W.2d 917 (Ct. App. 1984), the court of appeals held that a county sheriff's department dispatcher violated a ministerial duty by diverting a squad from dealing with a downed tree in a road without simultaneously assigning anyone else to provide for safe passage along the roadway. The duty of the public officer in that case was clear and absolute and, therefore, ministerial. *Id.* at 491 (citing *Cords v. Anderson,* 80 Wis. 2d 525, 542, 259 N.W.2d 672 (1977)).

Third, a public officer may also face liability when he or she is aware of a danger that is of "such quality that the public officer's duty to act becomes 'absolute, certain and imperative.' " *Olson,* 143 Wis. 2d at 715 (quoting *Cords,* 80 Wis. 2d at 541). In *Cords,* the court held that the immunity defense was not available to a state park manager who failed to either notify superiors of a hazardous 80-foot drop along a trail or erect signs which would warn park patrons of the trail's condition. In that case, "the manager knew of the danger, had the authority to act, and failed to act." *Barillari,* 186 Wis. 2d at 421–22 (citing *Cords,* 80 Wis. 2d at 541).

In *Losinski v. County of Trempealeau,* 946 F.2d 544, 546 (7th Cir. 1991), a case upon which the Barillaris rely, the United States Court of Appeals for the Seventh Circuit considered the known and compelling danger exception to immunity when it examined "the alleged failure of a deputy sheriff to protect a domestic violence victim from her husband, who shot and killed

her in the deputy's presence." According to the facts of the case, Julie Losinski obtained a temporary restraining order after a violent domestic fight to prohibit her husband, Donald, from having any contact with her. Soon thereafter, she began divorce proceedings. A court commissioner granted Julie's request to return to her home to retrieve some personal belongings. Due to the violent tendencies of her husband, Julie was accompanied by a sheriff's deputy. When Julie and the deputy arrived at her trailer home, Donald asked to speak to her alone inside the trailer. After asking Julie if this was what she wanted, the deputy permitted her to enter. An argument ensued in one of the bedrooms. The deputy entered the trailer but did not try to interrupt the argument or go into the bedroom. Donald then shot Julie once in the head and once in the neck. Donald was arrested by the deputy. Julie died three days later. *Id.* at 547–48. The Seventh Circuit, reversing the decision of the United States District Court for the Western District of Wisconsin, held that the deputy was not entitled to immunity because

> [o]nce [the deputy] assumed the duty to protect, his obligation was no longer discretionary. . . . Once the deputy acted [aware of the TRO and Donald's violent tendencies], the discretion that may otherwise attach to his position diminished. The deputy therefore was not entitled to immunity for the decisions made at the [Losinski home].

*Id.* at 554.

The Barillaris argue that either the ministerial duty exception described in *Domino* or the known and compelling danger exception identified in *Cords* and

*Losinski*[5] is applicable to the facts of this case. We disagree. The situation faced by the detectives in this case differs from the cases just described. Detectives Luick and Stanczyck retained discretion regarding the manner of investigation into the alleged sexual assault, including their implementation of assurances given to protect Shannon. The dissent argues that "an officer's promise to send law enforcement officers to an agreed upon place at a specified time to arrest an assailant" (dissenting op. at 264) transforms the subsequent police activity from discretionary acts to ministerial duties.[6] At first blush, this argument appears to have merit. Upon closer examination, however, we conclude that the nature of law enforcement requires moment-to-moment decision making and crisis management which, in turn, requires that the police department have the latitude to decide how best to utilize law enforcement resources. Unlike those professionals who have a set daily calendar they follow, police officers have no such luxury. For these reasons, it is clear that law enforcement officials must retain the discretion to determine, at all times, how best to carry out their responsibilities.

---

[5] We do not reach the issue of whether *Losinski* was correctly decided under Wisconsin law.

[6] Even using the dissent's view of the case, the circuit court properly granted summary judgment. The police could not have been causally negligent as a matter of law because there is no dispute between the parties in the record that Estergard was not at Shannon's residence at 3:30 p.m. on July 30. Had the police complied with the alleged promise to be there at 3:30, they would have discovered that Estergard was not present. At that point, the police would have again possessed the discretion to leave and, therefore, would have been immune from liability for that decision.

As both the circuit court and the court of appeals correctly concluded, the detectives could not predict that Shannon would be killed by Estergard on August 4, 1987. Furthermore,

> [u]nlike the 80-foot drop in *Cords,* or the tree lying across a roadway in *Domino,* the police in this case could not look at this situation and see a homicide just waiting to happen. Complaints of sexual assault and threats are, unfortunately, not rare in interspousal and boyfriend-girlfriend relationships. Nevertheless, as tragic and horrifying as these crimes are, the situations do not always lead to an immediately dangerous escalation of violence to the point of homicide.

*Barillari,* 186 Wis. 2d at 422–23.[7]

We look to our police departments to enforce our laws and to maintain order in what is becoming an increasingly dangerous society. Routinely, police face critical situations, many of which have the potential for violence. On a typical day, any given law enforcement officer may be arresting and questioning suspects, interviewing and counseling victims, talking to witnesses, rescuing children, and investigating criminal activity. In the course of their work, police must often try to console and reassure people who are distraught and fearful. Faced with escalating violence, they must continuously use their discretion to set priorities and

---

[7] The court of appeals noted the fact that "[o]ver 24,000 incidents of domestic abuse were reported in seventy Wisconsin counties in 1991. Wisconsin Department of Justice—Office of Crime Victim Services, Domestic Abuse Incident Report: 1990 & 1991, at 5 (1993). Additionally, 24% of all Wisconsin homicides in 1991 were domestic-abuse related." *Barillari,* 186 Wis. 2d at 423 n.4.

decide how best to handle specific incidents. Police officers must be free to perform their responsibilities, using their experience, training, and good judgment, without also fearing that they or their employer could be held liable for damages from their allegedly negligent discretionary decisions.

■

Upon examination of the allegations in the Barillaris' complaint against the City, we are not persuaded that the assurances offered by the detectives to be at Shannon's home on July 30, 1987, to arrest Estergard transformed the police department's discretionary actions into ministerial duties. We recognize that Shannon's death at the hands of Estergard was a very tragic event. However, the circuit court properly granted summary judgment in this case. The City is not liable for the discretionary acts of the police department and its officers, acts for which immunity is provided under § 893.80(4), Stats.

■

Finally, the Barillaris argue that they should be able to amend their complaint to state a claim for relief under 42 U.S.C. § 1983, in light of recent federal case law which suggests that *DeShaney* does not foreclose liability for public officers and employees when the state creates a dangerous situation or renders its citizens more vulnerable to danger. We conclude, however, that this court has no jurisdiction over an action that has been dismissed by a federal court.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. Wisconsin citizens, through their legislators, wisely have

262

determined that police and other public officers must be afforded discretion to perform their jobs effectively. Relying on their discretion, the police determine the methods best suited for investigation of crimes and apprehension of suspects. This discretion, however, is not without limits.

The majority concludes that in this case the detectives' promises to arrest the alleged assailant and to protect the victim do not subject the law enforcement officers to liability. I agree with this conclusion. Law enforcement officers cannot guarantee either full protection or an arrest in any given situation. This type of promise commits officers to do the best they can in such a situation, under the total circumstances of protecting the entire community. The officers and the City are not then subject to liability if the victim is harmed.

However, another promise was allegedly made in this case. According to the plaintiffs, the detectives promised that police officers would be at the victim's home at 3:30 p.m. on July 30 to arrest the assailant, who had agreed to be there at the time specified. As I read the majority opinion, it concludes that the detectives retained discretion over whether to implement this promise. Majority opinion at 259–262.

According to the limited information available at this stage of the proceeding, it appears that the assailant arrived at the victim's house sometime between 3:45 and 4:00 p.m. When a struggle ensued between the victim's stepfather and the assailant, the assailant fled. Apparently the police officers arrived at the house later that afternoon to investigate the struggle between the victim's stepfather and the assailant, but not in response to the alleged promise to be at the house to arrest the assailant. Sadly, the assailant's

263

flight was only temporary. He returned on August 4 and killed Shannon Barillari.

I conclude that an officer's promise to appear or send other officers to appear at an agreed upon place and time to arrest an assailant whose appearance at that place and time has been prearranged is of a different nature than the more general promises to protect and arrest. In my opinion, such a specific promise is, under *Lister,* "absolute, certain and imperative," a commitment to perform a "specific task" (arrest) at a "define[d] . . . time" (3:30 p.m., July 30, 1987) through a "prescribe[d] . . . mode and occasion." *Lister,* 72 Wis. 2d at 301.

The plaintiffs and defendant dispute whether the detectives made the more specific promise to appear and arrest the assailant at a specified place and time. This is a dispute of material issues of fact.

I conclude that the plaintiffs are entitled to a determination of (1) whether the more specific promise was made, and if so, (2) whether the officers were negligent in their failure to fulfill this promise, and (3) whether any such negligence was a substantial factor in causing the harm. These decisions cannot be made on a motion for summary judgment.

Thus, although I agree with much of the majority opinion, I conclude the majority opinion is too broad in suggesting that an officer's promise to appear at an agreed upon place and time to arrest an alleged violent assailant is, in and of itself, a discretionary act and that immunity exists when failure to fulfill the promise constitutes causal negligence.

I would therefore affirm the decision of the court of appeals but on different grounds.