COURT OF APPEALS
DECISION
DATED AND FILED

April 29, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2023AP2315**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022CV5827

**IN COURT OF APPEALS
DISTRICT I**

DAYCE WOODARD AND JADAN MACK,

PLAINTIFFS-APPELLANTS,

HMS WISCONSIN CASUALTY RECOVERY, DEAN HEALTH PLAN, INC. AND PAYNE & DOLAN, INC. GROUP BENEFIT PLAN,

INVOLUNTARY-PLAINTIFFS,

V.

TROOPER BAHLING,

DEFENDANT-RESPONDENT,

PERRYAHNA JACKSON, ABC INSURANCE COMPANY AND JOHN DOES 1-10,

DEFENDANTS.

APPEAL from an order of the circuit court for Milwaukee County: WILLIAM SOSNAY, Judge. *Affirmed*.

Before Donald, P.J., Geenen and Colón, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Dayce Woodard and Jadan Mack (together, "Plaintiffs") appeal from a circuit court order granting summary judgment to Colton Bahling, a trooper with the Wisconsin State Patrol.[1] The circuit court concluded that public officer immunity shielded Trooper Bahling from liability. We affirm.

## BACKGROUND

¶2 On August 7, 2020, Mack got a flat tire while traveling on Interstate 94 through Brookfield. Mack pulled his vehicle into the median, called AAA for a tow truck, and then called his friend, Woodard, to help him change the tire. When Woodard arrived, he parked directly behind Mack's vehicle in the median and engaged his hazard lights. The tow truck had not yet arrived, and Woodard tried to change the tire but lacked the proper tire iron. Woodard called his mother and asked her to bring a different tool. She brought the requested tool, but Plaintiffs were still unable to remove the flat tire. Soon after Woodard's mother arrived, at around 9:43 p.m., Trooper Bahling pulled behind their vehicles with his emergency lights activated.

¶3 Trooper Bahling first spoke with Woodard's mother, took her phone number, and then spoke with Plaintiffs. Trooper Bahling observed that the cars were in a safe place in a wide median with a lot of room, on a straightaway part of

---

[1] Colton Bahling is identified in the case caption as "Trooper" Bahling because Plaintiffs did not know his first name when they filed this action, but did know that he was employed as a trooper with the Wisconsin State Patrol.

the interstate with plenty of visibility, and had their hazard lights on. The median was wide enough that at least two cars could be parked side-by-side without crossing into the lanes of traffic. Traffic was fairly light and without backups, normal for that time of day.

¶4    When Woodard informed Trooper Bahling that they were struggling to change Mack's tire, Trooper Bahling retrieved his four-sided tire iron and attempted to assist, but he, too, could not remove the flat tire. Plaintiffs informed Trooper Bahling that a tow truck was already on its way.

¶5    Trooper Bahling checked to see if there was anything else the group needed, but Plaintiffs did not request further assistance from him. Trooper Bahling told the group to stop trying to change the tire and to wait in their vehicles for the tow truck to arrive. He also suggested that Woodard and his mother leave the scene rather than stay in the median to await the tow truck. Trooper Bahling then placed a courtesy-check sticker on Mack's vehicle and left the scene to continue his patrol.[2] Woodard's mother left shortly after Trooper Bahling.

¶6    Woodard and Mack waited in Woodard's vehicle for the tow truck. Mack called AAA again to check on the tow truck, and AAA told him that the truck would arrive shortly. The Plaintiffs exited the vehicle, and Woodard began collecting his tools, preparing to leave the scene.

¶7    At that moment, and just as the tow truck was arriving, Mack saw an out-of-control vehicle hurtling toward them. Witnesses reported that the vehicle

_____

[2] A courtesy-check sticker is a bright orange sticker placed in a visible location on the window of a disabled vehicle on a highway that indicates to other law enforcement that law enforcement performed a courtesy check, indicates that the vehicle operator was informed that the vehicle must be removed from the roadway within two hours, and specifies the time by which the vehicle must be removed from the roadway.

was traveling "visibly fast" in the middle lane, swerved through the left traffic lane, crashed into Woodard and his vehicle in the median, and then swerved back into the left traffic lane, striking another vehicle. The driver of the vehicle, later identified as Perryahna Jackson, fled the scene. She was eventually arrested and convicted of felony hit-and-run involving great bodily harm, for which she pleaded no-contest and is currently serving a seven-year sentence.

¶8      Plaintiffs sued Jackson, Trooper Bahling, another state trooper who was involved in the accident response, multiple John Doe law enforcement officers, and multiple insurance companies.[3] Following some discovery and dismissal of the other named trooper, Trooper Bahling moved for summary judgment based on public officer immunity for discretionary acts. Trooper Bahling argued that his decision to continue on patrol was within his discretion, and that no exception to immunity applied. Relevant here, Trooper Bahling argued that the "known and compelling danger" exception did not apply because the circumstances indicated no specific, compelling danger, and instead left room for Trooper Bahling to determine where his efforts would be most useful (i.e., parked and waiting with Plaintiffs for the tow truck or continuing on patrol). In response, Plaintiffs argued that Trooper Bahling was liable because: (1) he had a "ministerial duty" to remain in the median with Plaintiffs; or (2) being in the median presented a "known and compelling danger" which required Trooper Bahling to remain with Plaintiffs while they waited for a tow truck.

¶9      The circuit court concluded that neither exception applied and that Trooper Bahling was entitled to immunity for his decision to leave the scene after

---

[3] Multiple insurance companies were also impleaded as involuntary plaintiffs.

4

he confirmed that Plaintiffs had a tow truck on the way and needed no further assistance. Plaintiffs appeal.

## DISCUSSION

¶10 We review the circuit court's grant of summary judgment de novo, using the same methodology as the circuit court. ***Lodl v. Progressive N. Ins. Co.***, 2002 WI 71, ¶15, 253 Wis. 2d 323, 646 N.W.2d 314. Likewise, whether a party is entitled to immunity and whether any exceptions apply are questions of law that we review de novo. ***Id.***, ¶17. Summary judgment is proper if there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (2023-24).[4] "The well-established purpose of summary judgment procedure is to determine the existence of genuine factual disputes in order to 'avoid trials where there is nothing to try.'" ***Yahnke v. Carson***, 2000 WI 74, ¶10, 236 Wis. 2d 257, 613 N.W.2d 102 (quoting ***Rollins Burdick Hunter of Wis., Inc. v. Hamilton***, 101 Wis. 2d 460, 470, 304 N.W.2d 752 (1981)).

¶11 The issue in this case is the application of discretionary act immunity to a state employee. When a defendant asserts an immunity defense, negligence is presumed for the purpose of resolving summary judgment motions because disputes over negligence are not relevant if the defendant is entitled to immunity. ***Lodl***, 253 Wis. 2d 323, ¶¶16-17. As a result, the summary judgment analysis "focus[es] instead on whether the [governmental] action (or inaction) upon which liability is premised is entitled to immunity under the statute, and if so, whether one of the

---

[4] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

judicially-created exceptions to immunity applies."[5] *Id.* "Under the general rule as applied in Wisconsin, state officers and employees are immune from personal liability for injuries resulting from acts performed within the scope of their official duties." *Kimps v. Hill*, 200 Wis. 2d 1, 10, 546 N.W.2d 151 (1996) (citing *Lister v. Bd. of Regents*, 72 Wis. 2d 282, 300, 240 N.W.2d 610 (1976)). However, the immunity is not absolute. Among other exceptions, there is no immunity against liability associated with "known and compelling dangers that give rise to ministerial duties on the part of public officers or employees[.]"[6] *Lodl*, 253 Wis. 2d 323, ¶24.

¶12 Because the "known and compelling danger" exception to immunity requires that the party claiming the exception identify a ministerial duty that the public officer or employee was obligated to undertake, we briefly describe the difference between a discretionary act, to which immunity applies, and a ministerial act, to which immunity does not apply. *Engelhardt v. City of New Berlin*, 2019 WI 2, ¶31, 385 Wis. 2d 86, 921 N.W.2d 714. "A public officer's duty is ministerial only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Id.*, ¶32 (citations omitted). "For a duty to be ministerial, 'a public officer must be not only bound to act, but also bound by law to act in a very particular way[.]'" *Pinter v. Village of Stetsonville*, 2019 WI 74, ¶45, 387 Wis. 2d 475, 929 N.W.2d 547 (quoting *Yao v. Chapman*, 2005 WI App 200, ¶29, 287

---

[5] Although the cases cited in the parties' briefs and in this opinion often discuss municipal liability under WIS. STAT. § 893.80(4), where liability is the rule and immunity is the exception, the concepts, theories, and tests applying immunity for state and municipal actors are similar. *Kimps v. Hill*, 200 Wis. 2d 1, 10 n.6, 546 N.W.2d 151 (1996).

[6] On appeal, Plaintiffs raise only the "known and compelling danger" exception. We therefore discuss no others.

Wis. 2d 445, 705 N.W.2d 272)). "In contrast, a discretionary act 'involves the exercise of judgment in the application of a rule to specific facts.'" ***Pinter***, 387 Wis. 2d 475, ¶41 (quoting ***Willow Creek Ranch, L.L.C. v. Town of Shelby***, 2000 WI 56, ¶25, 235 Wis. 2d 409, 611 N.W.2d 693)). Described more simply, the difference between a discretionary act and a ministerial act depends on whether the circumstances are such that the public officer has the discretion to choose to act or not to act, or if the public officer is duty-bound to act in a particular manner.

¶13    The "known and compelling danger" exception reflects the fact that "circumstances may give rise to such a certain duty, where … the nature of the danger is compelling and known to the officer and is of such force that the public officer has no discretion not to act." ***C.L. v. Olson***, 143 Wis. 2d 701, 715, 422 N.W.2d 614 (1988). Prior cases applying this exception described the circumstances presented in those cases as examples of conditions "that are nearly certain to cause injury if not corrected, or in other words, are 'accidents waiting to happen.'"[7] ***Voss ex rel. Harrison v. Elkhorn Area Sch. Dist.***, 2006 WI App 234, ¶19, 297 Wis. 2d 389, 724 N.W.2d 420.

---

[7] Examples of these circumstances include: (1) an accident where hikers, legally accessing a park hiking trail at night, fell into a deep gorge located on a part of the trail known by the park manager to be particularly hazardous at night, ***Cords v. Anderson***, 80 Wis. 2d 525, 532-37, 259 N.W.2d 672 (1977); (2) an accident where a student, while wearing "fatal vision goggles" at the direction of the teacher during a lesson on the dangers of driving after having consumed alcohol, caught her foot on the leg of a desk, tripped, and hit her mouth on the top of the desk, ***Voss ex rel. Harrison v. Elkhorn Area School District***, 2006 WI App 234, ¶¶2-9, 297 Wis. 2d 389, 724 N.W.2d 420; and (3) an accident where a young child drowned during a field trip with 76 other children at a water park despite the fact that the child's mother told staff that organized the field trip that the child could not swim, and was assured by staff that the child's swimming ability would be evaluated at the shallow or zero-depth area of the pool, ***Engelhardt v. City of New Berlin***, 2019 WI 2, ¶¶13-15, 53-58, 385 Wis. 2d 86, 921 N.W.2d 714.

¶14     Plaintiffs make several arguments, most of which collapse into a single claim: that the hazards associated with a disabled vehicle in the median of Interstate 94 were of such a nature as to create a ministerial duty for Trooper Bahling to remain at the scene with his emergency lights engaged and/or order (not simply request) Woodard to move his vehicle so that it was not blocking Mack's disabled vehicle.[8]  We disagree with Plaintiffs and instead conclude that the known and compelling danger exception does not apply in this case.  Therefore, Trooper Bahling is immune from liability.

¶15     First, Plaintiffs fail to identify any specific danger arising from the circumstances other than what would appear to be the general danger that any disabled vehicle on an interstate median would face.  As Trooper Bahling explained, there was nothing especially dangerous about the location of the disabled vehicle or the surrounding circumstances (e.g., visibility, traffic, weather).  Second, there is no evidence Trooper Bahling knew anything about Jackson driving recklessly on the highway any time before the accident.  Whatever danger Jackson posed cannot be fairly characterized as a "known" danger.

---

[8]  For example, Plaintiffs say that although Trooper Bahling had discretion with respect to whether to stop and help Plaintiffs in the first place, his discretion was eliminated after he engaged the scene, and the circumstances required him to stay at the scene.  However, like their other arguments, this argument is defeated if the circumstances of the scene did not present a known and compelling danger regardless of the discretionary nature of Trooper Bahling's decision to stop and help Plaintiffs.

Additionally, Plaintiffs argue that a reasonable jury could conclude that the circumstances were sufficiently dangerous such that Trooper Bahling would have known about them, triggering a ministerial duty to stay on the scene.  This is, in our view, an attempt to manufacture a question of fact out of a question of law.  Even if Trooper Bahling's subjective assessment of the dangerousness of the circumstances is a question of fact, whether the circumstances objectively presented a known and compelling danger triggering a ministerial duty to act is a question of law that would not be resolved by a fact finder.  *Voss*, 297 Wis. 2d 389, ¶12.

¶16    Plaintiffs rely on ***Barillari v. City of Milwaukee***, 194 Wis. 2d 247, 533 N.W.2d 759 (1995), for the proposition that Trooper Bahling was required to do *something* to help abate the danger of the circumstances, and because he did not do so, he is not entitled to immunity.  Plaintiffs misread ***Barillari***.  In that case, police promised a domestic violence victim that they would arrest her ex-boyfriend, only for the ex-boyfriend to not be arrested and later murder the victim.[9]  ***Id.*** at 250. The victim's family and estate brought a wrongful death action against the City of Milwaukee, claiming that the police's promise to arrest the ex-boyfriend created a ministerial duty to protect the victim.  ***Id.***  The supreme court held that the known and compelling danger exception did not defeat immunity in that case because the police "could not look at this situation and see a homicide just waiting to happen." ***Id.*** at 261 (citation omitted).

¶17    Plaintiffs say that because the police in ***Barillari*** continued efforts to protect the victim despite not following through on the promise to arrest, the police were entitled to immunity.  However, the supreme court said no such thing.  Instead, it explained that police could not have predicted that the victim would be killed by her ex-boyfriend when she was, and police possess significant discretion to determine how best to allocate law enforcement resources:

> [W]e conclude that the nature of law enforcement requires moment-to-moment decision making and crisis management which, in turn, requires that the police department have the latitude to decide how to best utilize law enforcement resources.  Unlike those professionals who have a set daily calendar they follow, police officers have no such luxury. For these reasons, it is clear that law enforcement officials

---

[9] Rather than immediately seek an arrest warrant, law enforcement decided to give the ex-boyfriend a few days to voluntarily turn himself in, but instead, the ex-boyfriend acquired a gun, killed the victim, and then himself.  ***Barillari v. City of Milwaukee***, 194 Wis. 2d 247, 253, 533 N.W.2d 759 (1995).

> must retain the discretion to determine, at all times, how best
> to carry out their responsibilities.

*Id.* at 260.

¶18 Here, the evidence in the summary judgment record reflects that the vehicles were in a safe place on a wide median with a lot of room, on a straightaway part of the interstate with plenty of visibility, and had their hazard lights on. The median was wide enough that at least two cars could be parked side-by-side without crossing over into the lane of traffic. The circumstances do not present a situation that was "nearly certain to cause injury if not corrected[.]" *Voss*, 297 Wis. 2d 389, ¶19. Trooper Bahling "could not look at this situation and see a [car crash] just waiting to happen." *Barillari*, 194 Wis. 2d at 261 (citation omitted). Trooper Bahling's decision to continue his patrol, rather than remaining parked behind Plaintiffs while they waited for the tow truck, was a discretionary decision protected by immunity, and no known and compelling danger existed to defeat it.

## CONCLUSION

¶19 We conclude that Trooper Bahling is entitled to immunity, and the known and compelling danger exception does not apply. Accordingly, the circuit court correctly granted Trooper Bahling's motion for summary judgment.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.