Susan M. LODL, Plaintiff-Co-Appellant,††

KOHL'S DEPARTMENT STORE, Involuntary-Plaintiff,

v.

PROGRESSIVE NORTHERN INSURANCE COMPANY,
Defendant-Third-Party Plaintiff-Co-Appellant,

LIBERTY MUTUAL INSURANCE COMPANY, Defendant-
Appellant,

WAUSAU UNDERWRITERS INSURANCE COMPANY, Officer
Brian M. Fredericks, and Town of Pewaukee,
Defendants-Respondents,†

v.

Walker J. YOUNG, Jr., Third-Party Defendant-
Appellant.

Court of Appeals

*No. 00–0221. Submitted on briefs September 20,
2000.—Decided December 20, 2000.*

**2001 WI App 3**

(Also reported in 625 N.W.2d 601.)

††Petition to cross-review denied.
†Petition to review granted.

On behalf of the defendant-appellant and the third-party defendant-appellant, the cause was submitted on the briefs of *Thomas A. Cabush* of *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee. On behalf of the plaintiff co-appellant (joined by defendant-third-party plaintiff-co-appellant), the cause was submitted on the briefs of *Mark L. Thomsen* of *Cannon & Dunphy, S.C.*, Brookfield.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Raymond J. Pollen* and *Michele M. Ford* of *Crivello, Carlson, Mentkowski & Steeves, S.C.*, Milwaukee.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. In this appeal, we conclude that an intersection without operative traffic control signals during an evening storm is a compelling and known danger of such force that it creates a ministerial duty in the performance of traffic control. Therefore, we reverse the circuit court's grant of summary judgment to the Town of Pewaukee and Town of Pewaukee Police Officer Brian M. Fredericks because there is a genuine issue of material fact regarding whether Fredericks failed to act at the intersection.

¶ 2. The evening of June 18, 1998, was stormy, and the intersection of County Highway J and Capitol Drive in the Town of Pewaukee was dark because the traffic control lights were inoperative. Susan M. Lodl was the front seat passenger in a car being driven by Walker J. Young, Jr., that was eastbound on Capitol Drive when it was struck broadside by a vehicle being operated southbound on County Highway J by James R. Radmer. Lodl commenced this action against Fredericks, the Town of Pewaukee and its insurer, Wausau Underwriters Insurance Company (hereinafter Pewaukee). Lodl alleged that Fredericks was negligent in the manner in which he directed traffic at the intersection of County Highway J and Capitol Drive and that Pewaukee was liable for Fredericks's negligence under a respondeat superior theory. Pewaukee filed an answer, including affirmative defenses that Fredericks and Pewaukee were immune from suit under the doctrines of judicial, quasi-judicial, legislative and quasi-legislative immunity and that Lodl's claims were subject to the limitations and immunities in WIS. STAT. § 893.80 (1997–98).[1] Young was subsequently added as a third-party defendant by Radmer's insurer.

---

[1] The pertinent provisions of WIS. STAT. § 893.80(4) (1997–98), provide:

¶ 3. Pewaukee filed a motion seeking summary judgment on the grounds that Fredericks and Pewaukee were entitled to immunity under WIS. STAT. § 893.80(4) because there was no law or rule regarding the manner in which Fredericks was to direct traffic at the intersection that created a ministerial act. The circuit court granted summary judgment, concluding that although there were material issues of fact as to whether Fredericks and Pewaukee were negligent, they were entitled to immunity under the statute.

¶ 4. Lodl and Young appeal the grant of summary judgment to Fredericks and Pewaukee. Both appellants contend that Fredericks and Pewaukee are not entitled to immunity because either there was a breach of a ministerial duty or a compelling and known danger existed at the intersection.

¶ 5. We review a motion for summary judgment using the same methodology as the trial court. *See Ottinger v. Pinel*, 215 Wis. 2d 266, 272, 572 N.W.2d 519 (Ct. App. 1997). That methodology is well known, and we will not repeat it here except to observe that summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.*

> The dispute must center on a "genuine issue of material fact." A factual issue is "genuine" if the

No suit may be brought against any . . . political corporation, governmental subdivision . . . for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision . . . or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

> evidence is such that a reasonable jury could return a verdict for the nonmoving party. A "material fact" is one that impacts the resolution of the controversy. In analyzing whether there are genuine issues of material fact, we draw all reasonable inferences in favor of the nonmoving party.

*Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶ 32, 236 Wis. 2d 435, 613 N.W.2d 142 (citations omitted). Summary judgment presents a question of law that we review de novo. *See Ottinger*, 215 Wis. 2d at 273. When reviewing a summary judgment granting immunity to a public officer, we start with the proposition that the doctrine of public immunity assumes that the public officer was negligent. *See Kierstyn v. Racine Unified Sch. Dist.*, 221 Wis. 2d 563, 566, 585 N.W.2d 721 (Ct. App. 1998), *aff'd*, 228 Wis. 2d 81, 596 N.W.2d 417 (1999). Therefore, the question before us is whether Fredericks is entitled to immunity. *See id.*

██

¶ 6. Public employees are immune from personal liability for injuries resulting from the negligent performance of a discretionary act within the scope of their public office. *See Santiago v. Ware*, 205 Wis. 2d 295, 338, 556 N.W.2d 356 (Ct. App. 1996). However, this general rule is subject to exceptions, which represent a judicial balance struck between "the need of public officers to perform their functions freely against the right of an aggrieved party to seek redress." *Lister v. Bd. of Regents*, 72 Wis. 2d 282, 300, 240 N.W.2d 610 (1976). An exception may exist where

> the public officer's or employee's duty is absolute, certain and imperative, involving merely the performance of a specific task and (1) the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing

remains for the exercise of judgment or discretion, or (2) there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion. Additionally, the doctrine of immunity may be inapplicable where a public officer's challenged decision involves the exercise of discretion but the discretion exercised is not governmental, *i.e.*, does not require the application of statutes to facts nor a subjective evaluation of the law.

*Kierstyn*, 221 Wis. 2d at 569 (citations omitted).

¶ 7. We begin by rejecting Lodl's and Young's argument that the technique Fredericks was to use to direct traffic was so carefully defined that he did not have any discretion in selecting the method of traffic control that he would use. They contend that written policies on traffic direction were so detailed that Fredericks did not have to exercise any judgment or discretion. In other words, Lodl and Young assert that Fredericks's actions fall under the "ministerial act" exception to the general policy granting Fredericks and Pewaukee immunity.

¶ 8. Pewaukee had a written policy manual for police officers that included policies on directing and controlling traffic.

POLICY 4.23 - CONTROL AND DIRECTION OF TRAFFIC

I. PURPOSE - The purpose of controlling and directing traffic is to facilitate the safe and efficient movement of such traffic. It is up to the police to see that traffic moves as safely and as quickly as possible.

II. <u>PROCEDURE</u> - *Direction and Control - Officer should* first place himself in the center of traffic flow. Using police whistle signals as indicated in State Statutes 346.40, *officer should* indicate traffic which should stop by holding both arms horizontal, with palms of hands facing traffic. After traffic has stopped, *officer should* then turn his body to face one lane of traffic which has stopped. In this manner, the officer's body acts as a token barricade to the stopped traffic. To begin movement of a column of vehicles, *officer should* look directly at the lead driver, point at him, and then indicate with whistle signal and arm motion that he should move. To begin traffic flow from the opposite direction, repeat this procedure with lead driver in that column. After flow has started, intermittent arm signals will keep traffic moving. *Arm signals should* be intermittent, however, not continuous, and should be crisp. *Left turning should be directed* to do so in front of the officer, rather than behind. In this manner, the officer can observe the vehicle throughout the turn, thereby lessening the possibility of being struck by the turning vehicle. During hours of darkness, *officers should* use a flashlight or flares to assist him/her in directing traffic, officers should also wear reflective clothing to enhance his/her safety. (Emphasis added.)

Lodl and Young contend that the policy is mandatory because the foreword to the manual declares that "[t]he language and meaning in this manual are to be construed as general orders."[2] Lodl and Young also argue that, coupled with a state traffic regulation on using a

---

[2] This argument ignores an introductory "Rationale and Purpose" of traffic enforcement policies that requires an officer enforcing traffic safety regulations to enforce the law "impartially with mature judgment."

whistle while directing traffic, the Pewaukee policy imposed a duty that was "absolute, certain and imperative." Thus, traffic control was a ministerial duty.[3]

¶ 9. We disagree with this conclusion. Pewaukee Police Chief Denny Stone, who drafted the policy and procedures manual, testified that "should" was discretionary. Stone testified that the intersections in Pewaukee are growing in size and number and "there are [an] infinite number of circumstances that can occur in each one." Because of these variables, Stone stated that "it is impossible to give a black and white . . . rote policy that you must follow." For those reasons, we conclude that the policy is couched in discretionary terms, and a policy drafted in discretionary terms does not create a ministerial duty. *See Ottinger*, 215 Wis. 2d at 274–75.

¶ 10. We now consider whether the intersection constituted a compelling and known danger and therefore presented an imperative and mandatory duty. In a series of cases starting with *Cords v. Anderson*, 80 Wis. 2d 525, 259 N.W.2d 672 (1977), it has been held that a

---

[3] WISCONSIN STAT. § 346.40 provides:

**(1)** Whenever traffic is alternately being directed to stop and to proceed by a traffic officer using a whistle, such officer shall use the following whistle signals which shall signify as follows:

(a) One blast of the whistle means that all traffic not within the intersection shall stop.

(b) Two blasts of the whistle means that traffic which had been stopped prior to the one blast shall proceed through the intersection and that the traffic which was stopped by the one blast shall remain stopped.

**(2)** The traffic officer shall regulate the interval between the one and the 2 blasts so as to permit traffic that is legally within the intersection to clear the intersection.

compelling and known danger creates a duty of response that is an exception to the immunity granted public officers and municipalities. *See Kimps v. Hill*, 200 Wis. 2d 1, 15–16, 546 N.W.2d 151 (1996). In *Cords*, the supreme court held that a park manager had an absolute, certain or imperative duty to place warning signs or advise superiors of the conditions of a dangerous public trail. *See Cords*, 80 Wis. 2d at 542. The manager knew that people regularly used the trail at night and that it passed a few inches from a ninety-foot gorge. *See id.* at 536–37. The supreme court held that the park manager had a ministerial duty to erect signs warning of the obvious danger or advise superiors of the danger because there "can be no policy of leaving it alone when such an obvious danger exists." *Id.* at 538, 542. In *Domino v. Walworth County*, 118 Wis. 2d 488, 490–92, 347 N.W.2d 917 (Ct. App. 1984), we concluded that a police dispatcher informed of a downed tree was under a "duty so clear and absolute" that the dispatcher was legally obligated to send a police squad to investigate the situation.

¶ 11. The reasoning behind these cases was given in *Cords*:

> The question here is whether the [public officer] had an absolute, certain, or imperative duty to either place the signs warning the public of the dangerous conditions existing on the upper trail or to advise his superiors of the condition with a view toward adequate protection of the public responding to the invitation to use this facility. There comes a time when "the buck stops." [The public officer] knew the terrain at the glen was dangerous particularly at night; he was in a position as park manager to do something about it; he failed to do anything about it. He is liable for the breach of this duty.

*Cords*, 80 Wis. 2d at 541. As we noted in *Ottinger*, "[a] public officer may face liability when he or she is aware of a danger that is of such distinction that the public officer's duty to act becomes 'absolute, certain and imperative.' " *Ottinger*, 215 Wis. 2d at 277 (citation omitted).

¶ 12. In *Kimps*, 200 Wis. 2d at 15–16, the supreme court explained that when a public officer is faced with a compelling and known danger, he or she has a duty that is so clear and absolute that it falls within the definition of a ministerial duty. Fredericks is not immune from liability if he knew of the dangerous intersection, was in a position to do something about it, and yet did nothing. *See id.* at 15.

¶ 13. There is no genuine issue of material fact that the situation at the intersection of County Highway J and Capitol Drive was a compelling and known danger because the traffic control lights were inoperative during the evening storm. This situation is not unlike the path open for night hiking that ran within inches of a precipitous drop into a ninety-foot gorge. *See Cords*, 80 Wis. 2d at 536–37. Nor is it unlike a tree fallen across a road at 12:55 a.m. *See Domino*, 118 Wis. 2d at 490. The question we address is whether Fredericks acted appropriately in the face of this compelling and known danger. The evidence is contradictory.

¶ 14. The evidentiary record submitted by Pewaukee at the summary judgment motion establishes that Fredericks was dispatched at 8:49 p.m. to the intersection by Sergeant Richard Ryman because the traffic control lights were inoperative. Approximately thirty minutes earlier, Ryman had dropped stop signs posted on the traffic light poles at the intersection after he was notified that the lights were inoperative. Fredericks testified that when he arrived

at the intersection, he donned a blaze orange trench coat with reflective striping, grabbed a flashlight and positioned himself in the "absolute center of the intersection." Fredericks testified that "the problem that was going on there was that . . . nobody was yielding to nobody. Pretty much people were just flying through the intersection." Because the vehicles using the intersection were not obeying his signals, Fredericks testified that he called for assistance and portable stop signs.

¶ 15. In response to Pewaukee's evidentiary submissions, Lodl and Young produced contrary evidence. Young, the driver, testified that during the storm he was eastbound on Capitol Drive approaching the intersection with County Highway J and began to slow as he entered the intersection. He noticed that traffic traveling in both directions on County Highway J was stopped at the intersection and that there were no signs warning that the traffic lights were inoperative. Young testified that he saw an officer wearing a dirty yellow raincoat standing on the gravel shoulder along the southeast side of the road. Young testified that Fredericks gave no indication that he was attempting to control or direct traffic using the intersection and that the only time he saw a flashlight in Fredericks's hands was after the accident when Fredericks came to Young's vehicle. Young also testified that there was a car parked near Fredericks, but it did not have any lights operating as he entered the intersection.

¶ 16. There is a genuine issue of material fact as to whether Fredericks was in a position to do something about the compelling and known danger at the intersection and nonetheless did nothing. The trial court erred in granting summary judgment because a reasonable jury could find from Young's testimony that

Fredericks was in a position to do something about the compelling and known danger of the intersection and failed to act, in which case he is not entitled to immunity. *See Kimps*, 200 Wis. 2d at 15.

¶ 17. Pewaukee asserts that the nature of law enforcement is inherently dangerous and requires the officers to exercise discretion and judgment for which they should be immune. We understand Pewaukee's argument to be that law enforcement officers enjoy immunity simply because they are law enforcement officers, regardless of whether the police officer actually exercises discretion or not. In support, Pewaukee cites *Barillari v. City of Milwaukee*, 194 Wis. 2d 247, 259–60, 533 N.W.2d 759 (1995). But *Barillari* does not say that. *Barillari* says that police officers must be free to perform their responsibilities without fearing that they or their employers could be held liable for damages from "their allegedly negligent discretionary decisions." *Id.* at 261–62. Thus, we see that if the police officers actually exercise discretion, that exercise will be immunized. However, if the police officers fail to exercise discretion when a known and present danger exists, then immunity does not exist. The factual issue at trial will be whether the police officer in fact tried to alleviate a dangerous situation or whether he simply sat at the intersection and did nothing. The question of immunity will depend on that factual finding. We conclude that Pewaukee's reliance on *Barillari* is premature.

¶ 18. Summary judgment was inappropriately granted because whether or not Fredericks took action when confronted by a compelling and known danger is in dispute. Whether Fredericks and Pewaukee are entitled to governmental immunity hinges upon the

fact finder's resolution of the disputed facts. If the finder of fact concludes that Fredericks acted, Fredericks and Pewaukee are entitled to governmental immunity even if his direction of traffic was negligent.

*By the Court.*—Order reversed and cause remanded with directions.