Susan M. Lodl, Plaintiff-Co-Appellant,

Kohl's Department Store, Involuntary-Plaintiff,

v.

Progressive Northern Insurance Company, Defendant-Third-Party Plaintiff-Co-Appellant,

Liberty Mutual Insurance Company, Defendant-Appellant,

Wausau Underwriters Insurance Company, Officer Brian M. Fredericks and Town of Pewaukee, Defendants-Respondents-Petitioners,

v.

Walker J. Young, Jr., Third-Party Defendant-Appellant.

Supreme Court

*No. 00–0221. Oral argument November 6, 2001.—Decided June 25, 2002.*

2002 WI 71

(Also reported in 646 N.W.2d 314.)

For the defendants-respondents-petitioners there were briefs by *Raymond J. Pollen, Michele M. Ford* and *Crivello, Carlson, Mentkowski & Steeves, S.C.*, Milwaukee, and oral argument by *Michele Ford.*

For the defendant-appellant and third-party defendant-appellant there was a brief by *Thomas A. Cabush* and *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee, and oral argument by *Thomas A. Cabush.*

For the plaintiff-co-appellant and defendant-third-party plaintiff-co-appellant there was a brief by *John D. Surma* and *Hills & Hicks, S.C.*, Brookfield, and *Mark L. Thomsen, Sarah E. Frink* and *Cannon & Dunphy, S.C.*, Brookfield, and oral argument by *Mark L. Thomsen.*

¶ 1. DIANE S. SYKES, J. This case concerns the scope and proper application of the judicially-created "known danger" exception to municipal and public officer immunity under Wis. Stat. § 893.80(4) (1997–98).[1]

¶ 2. The plaintiff Susan Lodl was injured in an intersection accident in the Town of Pewaukee. The

---

[1] All future references to the Wisconsin Statutes will be to the 1997–98 version, unless otherwise noted.

traffic control lights at the intersection were inoperable because of an evening storm, and so the Town of Pewaukee dispatched a police officer to the scene. Lodl sued the officer and the Town, claiming that the officer negligently failed to control traffic at the intersection, and that the Town was liable for the officer's negligence under respondeat superior theory.

¶ 3. The circuit court granted summary judgment in favor of the officer and the Town, concluding that they were immune under Wis. Stat. § 893.80(4). The court of appeals reversed, concluding that the known danger exception to immunity applied, and that material factual issues regarding the adequacy of the officer's response to the known danger precluded summary judgment. We accepted review, and now reverse the court of appeals.

¶ 4. The "known danger" exception to municipal and public officer immunity under Wis. Stat. § 893.80(4) is a narrow, judicially-created exception that arises only when there exists a danger that is known and compelling enough to give rise to a ministerial duty on the part of a municipality or its officers. Here, the plaintiff contends that the danger created by the inoperative stoplights at the intersection gave rise to a ministerial duty on the part of the officer to undertake manual traffic control.

¶ 5. We conclude that the situation at the intersection, while admittedly dangerous, nonetheless allowed for the exercise of officer discretion as to the mode of response, and therefore did not give rise to a ministerial duty to perform manual traffic control. Accordingly, the known danger exception to municipal

and public officer immunity does not apply. Summary judgment based upon statutory immunity was properly granted.

¶ 6. On the night of July 18, 1998, a storm in Waukesha County caused the power to go out. The power outage affected the traffic control lights at the intersection of Capitol Drive and Highway J in the Town of Pewaukee. The inoperative stoplights turned what is normally a controlled intersection into an uncontrolled one. In addition, the heavy rain decreased visibility at the intersection.

¶ 7. The Town of Pewaukee Police Department dispatched Sergeant Richard Ryman to investigate the blackout at the intersection. Ryman testified in deposition that he "dropped," or opened, the folded stop signs affixed to the poles of the traffic control signals. Ryman then called dispatch to have an officer sent to the intersection, and left the scene.

¶ 8. At approximately 8:49 p.m., Officer Brian Fredericks was dispatched to the intersection, arriving about two minutes later. Fredericks parked his squad car on the south side of Capitol Drive. The parties disagree about what happened next. It is clear at the very least that Fredericks got out of his car, put on an orange or yellow raincoat and grabbed a flashlight. It is also undisputed that he called for backup and requested that portable stop signs be brought to the intersection.

¶ 9. The factual dispute—and the basis for the claim of negligence here—concerns the extent to which Fredericks was actually directing traffic at the time of the accident. Fredericks testified in deposition that he was in the center of the intersection attempting manual

traffic control, but that "nobody was yielding to nobody," which prompted his call for assistance and portable signs. Walker J. Young, Jr., the driver of the car Lodl was riding in, testified only that he saw Fredericks standing on the shoulder of the road as he approached the intersection.

¶ 10. The accident occurred within minutes of Fredericks' arrival at the scene, and before the police backup or portable signs arrived. Young and Lodl entered the intersection from the westbound lanes of Capitol Drive. At the same time, a car driven by James R. Radmer entered the intersection from the northbound lane of Highway J, colliding with Young's car and injuring Lodl.

¶ 11. Lodl sued, alleging that Fredericks was negligent in his manner of directing traffic at the intersection, and that the Town of Pewaukee was liable for Fredericks' negligence under respondeat superior theory. The Town and its officer asserted municipal and public officer immunity under Wis. Stat. § 893.80(4).

¶ 12. After extensive discovery, Fredericks and the Town moved for summary judgment on the basis of statutory immunity. The Waukesha County Circuit Court, the Honorable Kathryn W. Foster, granted the motion. Lodl appealed, arguing that the Town and its officer were not immune because the officer had a ministerial duty to manually control traffic at the intersection, by statute and Town policy, and by operation of the known danger exception.

¶ 13. The court of appeals concluded that while no statute, regulation, or policy created a ministerial duty to manually control traffic at the intersection, the known danger exception to immunity applied, because the inoperative traffic lights created a hazardous situation requiring a response. The court of appeals also

concluded that the factual dispute regarding the sufficiency of Fredericks' response precluded summary judgment on the issue of the known danger exception.

¶ 14. More specifically, the court of appeals concluded that the known danger exception required that Fredericks "do something about the compelling and known danger at the intersection." *Lodl v. Progressive Northern Ins. Co.,* 2001 WI App 3, ¶ 16, 240 Wis. 2d 652, 625 N.W.2d 601 (Ct. App. 2000). Because there were material issues of fact in dispute about whether Fredericks "nonetheless did nothing," the court of appeals reversed the summary judgment and remanded to the circuit court with these instructions:

> The factual issue at trial will be whether the police officer in fact tried to alleviate a dangerous situation or whether he simply sat at the intersection and did nothing. The question of immunity will depend on that factual finding . . . .
>
> If the finder of fact concludes that Fredericks acted, Fredericks and Pewaukee are entitled to governmental immunity even if his direction of traffic was negligent.

*Id.* at ¶¶ 17–18.

## II

¶ 15. We review an order granting summary judgment de novo, applying the same methodology as the circuit court, benefiting from the lower courts' analyses. *See Yahnke v. Carson,* 2000 WI 74, ¶ 10, 236 Wis. 2d 257, 613 N.W.2d 102. Summary judgment is granted when the pleadings, depositions, affidavits, and other moving papers establish that no material facts are in dispute and the moving party is entitled to judgment as a matter of law. *See* Wis. Stat. § 802.08.

¶ 16. "The well-established purpose of summary judgment procedure is to determine the existence of genuine factual disputes in order to 'avoid trials where there is nothing to try.' " *Yahnke,* 2000 WI 74, ¶ 10 (citing *Rollins Burdick Hunter of Wisconsin, Inc. v. Hamilton,* 101 Wis. 2d 460, 470, 304 N.W.2d 752 (1981)). If Fredericks and the Town are entitled to statutory immunity, then there is nothing to try even though factual disputes may exist on the issue of the officer's negligence.

¶ 17. The immunity defense assumes negligence, focusing instead on whether the municipal action (or inaction) upon which liability is premised is entitled to immunity under the statute, and if so, whether one of the judicially-created exceptions to immunity applies. *See Kimps v. Hill,* 200 Wis. 2d 1, 11–12, 546 N.W.2d 151 (1996); *Ottinger v. Pinel,* 215 Wis. 2d 266, 572 N.W.2d 519 (Ct. App. 1997). The application of the immunity statute and its exceptions involves the application of legal standards to a set of facts, which is a question of law. *See Kierstyn v. Racine Unified Sch. Dist.,* 228 Wis. 2d 81, 88, 596 N.W.2d 417 (1999).

¶ 18. As we have noted, there is a factual dispute in this case about whether Fredericks was in the intersection attempting traffic control or merely standing on the side of the road at the time of the accident. The circuit court considered this to be a factual dispute on the issue of whether the officer was negligent. The court of appeals characterized it instead as a factual dispute on the issue of the known danger exception to statutory immunity.

¶ 19. The circuit court had it right. The dispute about whether Fredericks was actually manually directing traffic at the intersection when the accident occurred goes to the question of whether he was negligent. We assume negligence for purposes of the immunity defense, and apply the test for immunity and its exceptions to the municipal act alleged to have been negligently performed or omitted.

## III

¶ 20. The governmental immunity statute, Wis. Stat. § 893.80(4), confers broad immunity from suit on municipalities and their officers and employees:

> No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employes nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employes for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

¶ 21. The statute immunizes against liability for legislative, quasi-legislative, judicial, and quasi-judicial acts, which have been collectively interpreted to include any act that involves the exercise of discretion and judgment. *See Willow Creek Ranch, L.L.C. v. Town of Shelby,* 2000 WI 56, 235 Wis. 2d 409, ¶ 25, 611 N.W.2d 693; *Kierstyn,* 228 Wis. 2d at 90; *Scarpaci v. Milwaukee County,* 96 Wis. 2d 663, 683, 292 N.W.2d 816 (1980); *Lifer v. Raymond,* 80 Wis. 2d 503, 512, 259 N.W.2d 537 (1977).

¶ 22. Municipal immunity derives from the common law[2] and was first adopted by this court in 1873. *See Hayes v. City of Oshkosh,* 33 Wis. 314, 318 (1873). It was partially abrogated almost 100 years later, in *Holytz v. City of Milwaukee,* 17 Wis. 2d 26, 37, 115 N.W.2d 618 (1962),[3] and was eventually codified by the legislature in what is now Wis. Stat. § 893.80(4). Municipal immunity differs from its state counterpart in that liability is the rule and immunity is the exception. *See Kimps,* 200 Wis. 2d at 11 n.6.

¶ 23. Immunity for public officers and employees, both state and municipal, is based largely upon public policy considerations that spring from the interest in protecting the public purse and a preference for political rather than judicial redress for the actions of public officers. *See Kierstyn,* 228 Wis. 2d at 89–90. The policy considerations include:

> (1) The danger of influencing public officers in the performance of their functions by the threat of a lawsuit; (2) the deterrent effect which the threat of personal liability might have on those who are considering entering public service; (3) the drain on valuable time caused by such actions; (4) the unfairness of subjecting officials to personal liability for the acts of their subordinates; and (5) the feeling that the ballot and removal procedures are more appropriate methods of dealing with misconduct in public office.

---

[2] Municipal and public officer immunity is distinct from the constitutionally-based doctrine of sovereign immunity, a "distinction [that] is often overlooked." *Kierstyn v. Racine Unified Sch. Dist.,* 228 Wis. 2d 81, 89, 596 N.W.2d 417 (1999).

[3] *Holytz* left immunity for legislative, quasi-legislative, judicial and quasi-judicial acts in place. *Holytz v. City of Milwaukee,* 17 Wis. 2d 26, 40, 115 N.W.2d 618 (1962).

*Lister v. Board of Regents,* 72 Wis. 2d 282, 299, 240 N.W.2d 610 (1976).

¶ 24. Both state and municipal immunity are subject to several exceptions "representing a judicial balance struck between 'the need of public officers to perform their functions freely [and] the right of an aggrieved party to seek redress.' " *C.L. v. Olson,* 143 Wis. 2d 701, 710, 422 N.W.2d 614 (1988) (quoting *Lister,* 72 Wis. 2d at 300). There is no immunity against liability associated with: 1) the performance of ministerial duties imposed by law; 2) known and compelling dangers that give rise to ministerial duties on the part of public officers or employees; 3) acts involving medical discretion; and 4) acts that are malicious, willful, and intentional. *See Willow Creek Ranch,* 2000 WI 56, ¶ 25. Lodl invokes the "ministerial duty" and "known danger" exceptions to immunity.

¶ 25. The ministerial duty exception is not so much an exception as a recognition that immunity law distinguishes between discretionary and ministerial acts, immunizing the performance of the former but not the latter. *See Kierstyn,* 228 Wis. 2d at 91. A ministerial duty is one that "is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister,* 72 Wis. 2d at 301.

¶ 26. Put another way, a duty is regarded as ministerial when it has been " 'positively imposed by law, and its performance required at a time and in a

337

manner, or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion.' " *Meyer v. Carmann,* 217 Wis. 329, 332, 73 N.W.2d 514 (1955) (quoting *First Nat'l Bank v. Filer,* 145 So. 204 (Fla. 1933)). If liability is premised upon the negligent performance (or non-performance) of a ministerial duty imposed by law or government policy, then immunity will not apply.

¶ 27. Lodl relies on Wis. Stat. § 346.40 and Section 4.23 of the Town of Pewaukee Police Department's Operations Policy to support her contention that Fredericks had a ministerial duty to manually control traffic at the intersection. Section 346.40 of the Wisconsin Statutes describes the various whistle blasts a law enforcement officer must use when directing traffic using a whistle.[4] The statute does not, however, direct law enforcement officers to perform manual traffic control in any given situation, or otherwise remove officer discretion over the decision to undertake manual traffic control.

¶ 28. Section 4.23 of the Operations Policy Manual describes the procedure an officer should follow when conducting manual traffic control:

POLICY 4.23 - CONTROL AND DIRECTION OF TRAFFIC

ˉI. *PURPOSE* - The purpose of controlling and directing traffic is to facilitate the safe and efficient movement of such traffic. It is up to the police to see that traffic moves as safely and as quickly as possible.

---

[4] Wisconsin Statute § 346.40(1) states: "Whenever traffic is alternately being directed to stop and to proceed by a traffic officer using a whistle, such officer shall use the following whistle signals which shall signify as follows . . . ."

II. *PROCEDURE* - *Direction and Control* - *Officer should* first place himself in the center of traffic flow. Using police whistle signals as indicated in State Statutes 346.40, *officer should* indicate traffic which should stop by holding both arms horizontal, with palms of hands facing traffic. After traffic has stopped, *officer should* then turn his body to face one lane of traffic which has stopped. In this manner, the officer's body acts as a token barricade to the stopped traffic. To begin movement of a column of vehicles, *officer should* look directly at the lead driver, point at him, and then indicate with whistle signal and arm motion that he should move. To begin traffic flow from the opposite direction, repeat this procedure with lead driver in that column. After flow has started, intermittent arm signals will keep traffic moving. *Arm signals should* be intermittent, however, not continuous, and should be crisp. *Left turning should be directed* to do so in front of the officer, rather than behind. In this manner, the officer can observe the vehicle throughout the turn, thereby lessening the possibility of being struck by the turning vehicle. During hours of darkness, *officers should* use a flashlight or flares to assist him/her in directing traffic, officers should also wear reflective clothing to enhance his/her safety. (Emphasis added.)

¶ 29. Pewaukee Police Chief Denny Stone, who drafted the procedures and policies contained in the manual, testified that Section 4.23 "is a guideline. There is no way for me to sit in an office and tell them the best way to do many, many of the jobs that we have to perform, and this is a classic example . . . . It is simply a guideline. It is nothing more than that."

¶ 30. The Forward to the manual states that "[o]fficers are expected to use judgment in handling problems," and the manual contemplates that officers may have to deviate from the guidelines in cases of "unforeseen circumstances." As the court of appeals

noted, the policy regarding traffic direction and control is itself cast in discretionary terms, using the word "should" throughout.

¶ 31. Finally, while the manual describes the procedure that an officer should ordinarily follow when manually controlling traffic, it does not eliminate the officer's discretion to decide when or whether to undertake manual traffic control in the first instance. Considered separately or together, the statute and the policy manual merely establish the general protocols for manual traffic control when an officer, in the exercise of his judgment and discretion, decides to undertake it. Accordingly, we agree with the court of appeals' conclusion that neither the statute nor the policy manual establishes a ministerial duty to manually direct traffic.

¶ 32. We cannot agree, however, with the court of appeals' analysis of the known danger exception. The exception was first announced in *Cords v. Anderson,* 80 Wis. 2d 525, 259 N.W.2d 672 (1977), a case which involved an accident on a state park hiking trail. The trail ran alongside a 90–foot unguarded gorge, and the plaintiffs were seriously injured when they fell into the steep gorge while hiking at dusk. They sued the park manager, alleging that he knew of the hazard presented by the sharp unguarded drop-off, and that his failure to post signs warning against it was negligence.

¶ 33. This court concluded that the compelling danger presented by the trail, which was known to the park manager, gave rise to a ministerial duty requiring the manager to post warning signs on the trail or to advise his superiors of the hazardous condition so that they could do so. *See id.* at 541. The court held that the compellingly dangerous circumstances established a

340

duty to warn that was "so clear and so absolute that it falls within the definition of a ministerial duty." *Id.* at 542.

¶ 34. We elaborated on the known danger exception in *C.L.*, 143 Wis. 2d at 714–18, which involved allegations that a state parole agent negligently supervised a paroled sex offender, who abducted and raped the plaintiff while under the agent's parole supervision. There, we indicated that:

> [A] public officer's duty is ministerial where a danger is known and of such quality that the public officer's duty to act becomes "absolute, certain and imperative . . ." *Cords*, 80 Wis. 2d at 541 (quoting *Lister*, 72 Wis. 2d at 301). Stated otherwise, where a public officer's duty is not generally prescribed and defined by law in time, mode, and occasion, such that "nothing remains for judgment or discretion," circumstances may give rise to such a certain duty where, as in *Cords*, the nature of the danger is compelling and known to the officer and is of such force that the public officer has no discretion not to act. As subsequently explained in *Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 292 N.W.2d 816 (1980), *it is the nature of the specific act upon which liability is based, as opposed to the categorization of the general duties of a public officer, which is determinative of whether an officer is immune from liability.*

*C.L.*, 143 Wis. 2d at 715–16 (footnote omitted)(emphasis added). We concluded in *C.L.* that the known danger exception did not apply, because the danger presented by the parolee was not of "such a degree of probability" that the parole agent was deprived of discretion regarding the manner and level of parole supervision required. *Id.* at 724–25.

¶ 35. Similarly, in *Barillari v. City of Milwaukee*, 194 Wis. 2d 247, 533 N.W.2d 759 (1995), we held that the known danger exception did not apply to a claim

that the City of Milwaukee Police Department was negligent in failing to fulfill a promise to arrest a sex offender. In that case, the police had promised a sexual assault victim that they would arrest her assailant, a former boyfriend, but did not do so because the district attorney decided to give the suspect a few days to turn himself in. In the meantime, the former boyfriend attacked again, this time killing the victim and himself. We concluded that "the nature of law enforcement requires moment-to-moment decision making and crisis management which, in turn, requires that the police department have the latitude to decide how best to utilize law enforcement resources." *Id.* at 260.

¶ 36. Other cases involving the application of the known danger exception to the alleged negligence of law enforcement officers have produced mixed results. In *Hoskins v. Dodge County,* 2002 WI App 40, 251 Wis. 2d 276, 642 N.W.2d 213, a case involving a claim of negligent search-and-rescue, the exception was held inapplicable where law enforcement received a report of a boat in trouble, sent a deputy to investigate by land but did not dispatch a rescue boat. In *Ottinger v. Pinel,* 215 Wis. 2d 266, 572 N.W.2d 519 (Ct. App. 1997), the exception was also held inapplicable to a claim that corrections officers negligently failed to prevent an inmate's escape from a work-release facility.

¶ 37. In contrast, in *Linville v. City of Janesville,* 174 Wis. 2d 571, 497 N.W.2d 465 (Ct. App. 1993), *aff'd,* 184 Wis. 2d 705, 516 N.W.2d 427 (1994), the known danger exception applied to pierce immunity for negligent failure to attempt an immediate rescue of occupants of a van submerged in a park pond. And in *Domino v. Walworth County,* 118 Wis. 2d 488, 347 N.W.2d 917 (Ct. App. 1984), the known danger excep-

tion applied where a sheriff's department failed to send an officer to investigate a tree that had fallen across a road at night.

■

¶ 38. These cases, and others not involving law enforcement officers,[5] demonstrate the case-by-case nature of the immunity inquiry. Nevertheless, the legal standard remains the same: a dangerous situation will be held to give rise to a ministerial duty only when "there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion." *C.L.,* 142 Wis. 2d at 717.

■

¶ 39. In this context, the ministerial duty arises not by operation of law, regulation or government policy, but by virtue of particularly hazardous circumstances—circumstances that are both known to the municipality or its officers and sufficiently dangerous to require an explicit, non-discretionary municipal response. If liability is premised upon the negligent performance (or non-performance) of a ministerial duty

[5] *See Kierstyn,* 228 Wis. 2d at 96 (reduction of disability benefits due to mistaken advice by school district benefits specialist not a known and compelling danger); *Kimps v. Hill,* 200 Wis. 2d 1, 17–18, 546 N.W.2d 151 (1996) (separation of metal base from volleyball stand in state university physical education class not a known and compelling danger); *Bauder v. Delavan-Darien Sch. Dist.,* 207 Wis. 2d 310, 315, 558 N.W.2d 881 (Ct. App. 1996)(use of partially-deflated soccer ball in indoor gym class at public school not a known and compelling danger).

that arises by virtue of a known and compelling danger, then immunity will not apply.[6]

¶ 40. The cases also demonstrate that not every dangerous situation will give rise to a duty that can be characterized as ministerial for purposes of piercing immunity. A ministerial duty—whether imposed by law or arising out of dangerous circumstances—is one that is absolute, certain, and imperative. To qualify as ministerial, the time, mode, and occasion for perfor- mance of the duty must be so certain that discretion is essentially eliminated. For the known danger exception to apply, the danger must be compelling enough that a self-evident, particularized, and non-discretionary mu- nicipal action is required. The focus is on the specific act the public officer or official is alleged to have negligently performed or omitted.

¶ 41. The court of appeals concluded that the inoperable traffic lights at the intersection constituted a known danger requiring the responding officer to "do something," and because there is a factual dispute about whether the officer nevertheless "did nothing," sum-

---

[6] The dissent views this opinion as collapsing the known danger exception into the ministerial duty exception. This is untrue; the exceptions remain separate and distinct. As the cases make clear, however, both exceptions derive from the principle that only discretionary acts are immunized. The exceptions constitute two different legal theories by which courts determine that a particular municipal or public officer duty was non-discretionary and therefore not entitled to immu- nity. The ministerial duty exception applies when a law, statute, ordinance, government policy, or the like establishes the min- isterial duty. The known danger exception applies when the known dangerous circumstances establish the ministerial duty.

mary judgment on the immunity issue was improper. There are two problems with the court's analysis.

¶ 42. First, as noted above, the court of appeals misconstrued the factual dispute about Fredericks' negligence as a factual dispute about the applicability of the known danger exception. For purposes of the immunity defense, we assume that the public officer was negligent in performing or omitting to perform the act in question, and focus instead on whether the act negligently performed or omitted can be characterized as ministerial in nature because of known dangerous circumstances. That there is a factual dispute about the officer's negligence is irrelevant to the immunity inquiry.

¶ 43. Second, the court of appeals' analysis is incomplete. The court determined only that the situation at the intersection was sufficiently dangerous to require the officer to "do something" about it. The generic "doing" of "something" cannot possibly be characterized as a ministerial duty.

¶ 44. A ministerial duty is not an undifferentiated duty to act but a duty to act *in a particular way:* to post a warning sign (*Cords*), to attempt an immediate rescue of occupants of a submerged van (*Linville*), to send a squad to investigate a downed tree in a roadway at night (*Domino*). A ministerial duty, by definition, is explicit as to time, mode, and occasion for performance, and does not admit of any discretion.[7]

---

[7] We acknowledge that there is language in some of the cases referring generally to a "duty to act" instead of a duty to perform a particular act. As we have noted, a generalized "duty to act," without more, could never be characterized as ministe-

¶ 45. Accordingly, in this case, a proper application of the known danger exception begins with the assumption that Fredericks was negligent in failing to perform, or inadequately performing, manual traffic control. To pierce immunity pursuant to this exception, we must be able to conclude that the circumstances were sufficiently dangerous so as to give rise to a ministerial duty—not merely a generalized "duty to act" in some unspecified way, but a duty to perform the particular act upon which liability is premised, here, manual traffic control. We cannot do so.

¶ 46. While the circumstances posed by the uncontrolled intersection were certainly known and dangerous, the situation nonetheless allowed for the exercise of the officer's discretion as to the mode of response. Stated differently, the situation, while dangerous, did not compel a particularized, non-discretionary action on the part of the responding officer. More particularly, Fredericks did not have a ministerial duty to perform manual traffic control.

¶ 47. The officer could reasonably conclude, in his judgment, that the situation at the intersection was not conducive to manual traffic control by a single officer, or he could choose to address the danger in another way

rial in nature, because it is too non-specific and leaves the mode of official action open to discretion. We note again that a ministerial duty, whether imposed by law or arising out of known dangerous circumstances, requires specificity as to time, mode, and occasion for performance so that nothing remains for the exercise of discretion. Despite the sometimes generalized language, the cases finding a known danger sufficient to pierce immunity are premised on conclusions that particularized government responses were required by the dangerous circumstances in question.

(e.g., portable signs, flares, flashing squad lights). In any event, where, as here, the public officer clearly retained discretionary authority over the nature and mode of his response to the known dangerous situation, the circumstances did not give rise to a duty that can be characterized as ministerial, and the known danger exception to municipal and public officer immunity does not apply.

¶ 48. Because a ministerial duty to manually control traffic did not exist by operation of law, regulation, or government policy, or arise by virtue of a known and compelling danger, Fredericks and the Town are entitled to municipal immunity pursuant to Wis. Stat. § 893.80(4). Summary judgment was properly granted, and the decision of the court of appeals is reversed.

*By the Court.*— The decision of the court of appeals is reversed.

¶ 49. ANN WALSH BRADLEY, J. *(dissenting).* Today's majority opinion reduces the number of recognized exceptions to public officer immunity, thereby expanding immunity. It accomplishes this change in the law by collapsing the known danger exception into the ministerial duty exception, and then adding a heretofore unknown "specific act" requirement. Because the majority opinion's new approach is contrary to precedent and without authority, I respectfully dissent.

¶ 50. Numerous public officer immunity cases of both this court and the court of appeals discuss the known danger exception as distinct from the ministerial duty exception. *See, e.g., Kierstyn v. Racine Unified Sch. Dist.,* 228 Wis. 2d 81, 91, 95, 596 N.W.2d 417 (1999); *Sheridan v. City of Janesville,* 164 Wis. 2d 420, 426, 474 N.W.2d 799 (Ct. App. 1991). Most recently, this

court confirmed the known danger exception as distinct in *Willow Creek Ranch, LLC v. Town of Shelby,* 2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693. The court explained: "immunity does not apply to the performance of: (1) ministerial duties; (2) duties to address a 'known danger;' (3) actions involving medical discretion (the *Scarpaci* rule); and (4) actions that are 'malicious, willful, and intentional.'" *Id.* at ¶ 26.

¶ 51. Yet the majority appears unwilling to be bound by this precedent. Instead, without withdrawing language or overruling cases, the majority transforms established precedent and adds a new standard that requires a "particularized" "specific act." Majority op. at ¶ 40.

¶ 52. To be sure, there is ample language in the case law that relates the known danger exception to the ministerial duty exception. However, the majority goes too far, not just relating the two exceptions but ultimately equating them. The two exceptions are not the same.

### ESTABLISHED PRECEDENT

¶ 53. Any analysis of the known danger exception must begin with *Cords v. Anderson,* 80 Wis. 2d 525, 259 N.W.2d 672 (1977). Although the court in *Cords* discussed a "ministerial duty" and did not use phrases such as "known and compelling danger" or "known danger," over time *Cords* became the cornerstone for the known danger exception. The majority agrees that "[t]he [known danger] exception was first announced in *Cords.*" Majority op. at ¶ 32.

¶ 54. The plaintiffs in *Cords* fell into a deep gorge at a state park, sustaining severe injuries. One of them fell while on a hiking trail only one foot from a steep

drop-off into the gorge. *Cords,* 80 Wis. 2d at 532. The park manager, Anderson, had neither marked the trail with warning signs nor informed his superiors of the danger, even though it was his job to make sure the trails were in a safe condition and to give reports to his superiors as to any steps to be taken to reduce safety hazards. *Id.* at 536–37.

¶ 55. This court in *Cords* set up its analysis using the standards that describe the ministerial duty exception to immunity. 80 Wis. 2d at 541. However, the court's application of the these standards and its holding marked the beginning of the known danger exception as a distinct exception to immunity. The court explained as follows:

> Anderson knew the terrain at the glen was dangerous particularly at night; he was in a position as park manager to do something about it; he failed to do anything about it. He is liable for the breach of this duty.

*Id.* The court then concluded:

> We hold that the duty to either place warning signs or advise superiors of the conditions is, on the facts here, a duty so clear and so absolute that it falls within the definition of a ministerial duty.

*Id.* at 542.

¶ 56. Thus, in *Cords,* it was not that the park manager failed to perform a "specific act" for which "the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." Rather, it was that the park manager failed to act in the face of a dangerous situation that clearly required him to take action.

¶ 57. After *Cords,* subsequent decisions solidified the known danger exception as an exception separate from the ministerial duty exception with overlapping but different contours. For example, in *C.L. v. Olson,* 143 Wis. 2d 701, 715, 422 N.W.2d 614 (1988), this court acknowledged the relationship of the two exceptions:

> a public officer's duty is ministerial where a danger is known and of such quality that the public officer's duty to act becomes "absolute, certain and imperative."

It then indicated the difference:

> [W]here a public officer's duty is not generally prescribed and defined by law in time, mode, and occasion, such that "nothing remains for judgment or discretion," circumstances may give rise to such a certain duty where, as in *Cords,* the nature of the danger is compelling and known to the officer and is of such force that the public officer *has no discretion not to act.*

*Id.* (emphasis added) (internal quotations omitted).

¶ 58. Similarly, in *Kimps v. Hill,* 200 Wis. 2d 1, 546 N.W.2d 151 (1996), the court related the two exceptions, but characterized the known danger exception as involving the failure to act: "a public officer's duty becomes ministerial only 'where, as in *Cords,* the nature of the danger is compelling and known to the officer and is of such force that the public officer *has no discretion not to act.*'" *Id.* at 15 (emphasis added). The *Kimps* court also noted that the facts in *Cords* "warranted a special exception be made to the general rule of public employee immunity." *Id.*

¶ 59. In short, the duty to act in a known danger case need not be "prescribed and defined by law in time, mode, and occasion such that 'nothing remains for judgment or discretion.'" *C.L.,* 143 Wis. 2d at 715.

350

Rather, liability attaches because the danger is of such a quality that the public officer "has no discretion not to act." *Id.*

¶ 60. To put it simply, the distinction between the two exceptions is this: the foundation for liability in the ministerial duty exception is that the defendant failed in performing (or failed to perform) a highly particularized and prescribed task whereas the foundation for liability in the known danger exception is that the defendant failed to act in the face of a danger clearly requiring action.

## FROM ESTABLISHED PRECEDENT
## TO THE NEW STANDARD

¶ 61. The majority rejects the distinction between the two exceptions and collapses the known danger exception into the ministerial duty exception. It does so by departing from the "has no discretion not to act" standard associated with the known danger exception and replacing that standard with its own new standard. The majority makes three leaps in the law of public officer immunity to accomplish this transformation. These leaps are contrary to precedent and without authority.

¶ 62. As a first leap, the majority begins the process of collapsing one exception into the other by questioning whether the ministerial duty exception is itself a distinct exception to immunity. The majority makes this announcement: "The ministerial duty exception is not so much an exception as a recognition that immunity law distinguishes between discretionary and ministerial acts, immunizing the performance of the former but not the latter. *See Kierstyn,* 228 Wis. 2d at 91." Majority op. at ¶ 25.

351

¶ 63. Although the majority is correct that *Kierstyn* states that "the law has drawn a distinction between discretionary and ministerial acts," 228 Wis. 2d at 91, the majority is incorrect in citing *Kierstyn* (or any authority) for the proposition that the performance of ministerial acts is not actually an exception to immunity. Our precedent, including *Kierstyn,* clearly states the contrary. *Willow Creek,* 2000 WI 56, ¶ 26 ("[t]his court has recognized four exceptions . . . (1) ministerial duties . . ."); *Kierstyn,* 228 Wis. 2d at 90 ("this court has recognized four exceptions to public officer immunity"); *Kimps,* 200 Wis. 2d at 10 ("doctrine of immunity is not without exception, however, the most common of which is . . . ministerial duty").

¶ 64. The second leap the majority makes is to graft the time, mode and occasion test of the ministerial duty exception onto the known danger exception. Citing *C.L.,* the majority explains that the known danger must be of such force that "the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion." Majority op. at ¶ 38. However, when *C.L.* cited *Cords* for this proposition, it did so incorrectly. *Cords,* which left it to the park manager's discretion to *either* post signs indicating the danger *or* inform his superiors, cannot be read for this proposition that *C.L.* attributes to it. Indeed, elsewhere in *C.L.,* the court correctly recognized that the time, mode and occasion test of the ministerial duty exception does not apply to the known danger exception. 143 Wis. 2d at 715.

¶ 65. Finally, in the third leap, the majority magnifies *C.L.*'s erroneous citation to *Cords* by concluding, without citation to authority, that for the known danger exception to apply, the danger must be such that a "self-evident, *particularized,* and non-discretionary" ac-

tion is required and that "[t]he focus is on the *specific act* the public officer or official is alleged to have negligently performed or omitted." Majority op. at ¶ 40 (emphasis added). Thus, the majority requires a level of particularity heretofore unknown and accomplishes the collapse of the known danger exception into the ministerial duty exception.

¶ 66. The crux of the majority's rationale for transforming the "has no discretion not to act" standard into a new standard appears in a footnote, again, without citation to authority:

> We acknowledge that there is language in some of the cases referring generally to a "duty to act" instead of a duty to perform a particular act. . . . Despite the sometimes generalized language, the cases finding a known danger sufficient to pierce immunity are premised on conclusions that particularized government responses were required by the dangerous circumstances in question.

Majority op. at ¶ 44 n. 7.

¶ 67. The final effect of the majority's analysis is to eliminate the known danger exception as envisioned by *Cords* and subsequent precedent. The majority opinion renders essentially meaningless the case law's distinction between the known danger exception and the ministerial duty exception.

¶ 68. That the majority is eliminating one of the recognized exceptions to immunity is underscored by an application of its new standard to the facts of *Cords*. Was the park manager's duty to either post signs or inform his superiors sufficiently "particularized" for the majority test? It seems that the answer may be no. Was the manager's duty one whose "time, mode and occasion for performance is evident with such certainty that

nothing remains for the exercise of judgment and discretion"? Again, the answer seems to be no. What was the "specific act" in *Cords* that the manager negligently performed or omitted? Was it the failure to inform his superiors or the failure to post signs?

¶ 69. *Cords* shows that the degree of particularity the majority requires before the known danger exception will apply is too particular. It seems that under the majority analysis here, the result in *Cords* would have come out differently.

¶ 70. In addition, the majority's new conception of the known danger exception requiring a "particularized" "specific act" has uncertain consequences. Most importantly, by eliminating one of four exceptions to immunity, it expands immunity. However, there may be other consequences as well, and the majority's approach leaves fundamental questions unanswered in the pleading and practice of cases involving public officer immunity.

¶ 71. For example, how must plaintiffs plead and assert the known danger exception in order to survive motions to dismiss and motions for summary judgment? At what stage must a plaintiff first identify the "particularized" "specific act" required of the defendant? What if the plaintiff identifies one specific act (for example, manual traffic control), but it turns out that it was a different specific act that was required in the face of the known danger? Does the plaintiff have the burden to show *which* specific act was required, or does the defendant have the burden to show that *no* specific act was required?

¶ 72. Unlike the majority, I apply the known danger exception as it exists in our precedent, and in doing so, I reach the same conclusion as the court of appeals. The situation here—a failed traffic light that left a

high-speed intersection uncontrolled during a night-time storm—is a known danger. I also agree with the court of appeals that this danger is not unlike the danger presented by a path open for night-time hiking that runs within inches of a precipitous drop into a gorge. Finally, as the court of appeals determined, summary judgment was granted improperly because the question of whether Officer Fredericks took action when confronted with a known danger hinges upon the resolution of genuinely disputed questions of fact.

¶ 73. In sum, I cannot join the majority opinion because it eliminates the known danger exception as a distinct exception to immunity. Rejecting precedent, the majority equates the two exceptions, then adds a new "specific act" requirement. Like the court of appeals, I would apply the known danger exception as it existed in our precedent until today. Accordingly, I respectfully dissent.

¶ 74. I am authorized to state that SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE, joins this dissent.