Brittany L. NOFFKE, by her guardian ad litem,
Mart W. Swenson, Tina Kropelin
and Thad Noffke,
Plaintiffs-Appellants,†

v.

Kevin BAKKE, American Family Mutual Insurance
Company, Holmen High School,
Holmen Area School District and
Wausau Underwriters Insurance Company,
Defendants-Respondents,†

GUNDERSEN LUTHERAN HEALTH PLAN, INC.,
and Atrium Health Plan, Inc.,
Defendants.

Court of Appeals

*No. 2006AP1886. Submitted on briefs January 23, 2007.*
*—Decided February 14, 2008.*

2008 WI App 38

(Also reported in 748 N.W.2d 195.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Tracy N. Tool* of *Bye, Goff & Rohde, Ltd.*, River Falls.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *Peggy E. Van Horn* of *Law Offices of Stilp & Cotton,* Brookfield, and *Kara M. Burgos* of *Moen Sheehan Meyer, Ltd.*, La Crosse.

Before Higginbotham, P.J., Dykman and Lundsten, JJ.

¶ 1. HIGGINBOTHAM, P.J. Brittany Noffke was a cheerleader for Holmen High School when she fell and was injured while practicing a cheerleading stunt during a pre-game warm-up session. Noffke sued Kevin Bakke for negligently failing to properly spot Noffke while

practicing the stunt. She also sued Holmen High School and the Holmen Area School District and the school district's insurance company (collectively "the school district") alleging negligence by the school's cheerleading coach in failing to provide a secondary spotter for the stunt and in failing to require the use of mats during practice, as recommended by national rules regarding cheerleading.

¶ 2. Bakke moved for summary judgment on the ground that he was immune from liability based on negligence by operation of WIS. STAT. § 895.525(4m),[1] the statute governing liability for co-participants of contact team sports.[2] The school district also moved for summary judgment on three theories, one of which was governmental immunity under WIS. STAT. § 893.80(4). The circuit court granted summary judgment in Bakke's favor, concluding he was immune by operation of § 895.525(4m). After rejecting Noffke's arguments that the rules book imposed a ministerial duty on the coach and that the coach's conduct created a known and present danger, the court also entered summary judgment for the school district.

¶ 3. Noffke argues that WIS. STAT. § 895.525(4m) does not apply to the present facts and therefore the

_____

[1] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

[2] Bakke had also moved for summary judgment on two additional grounds, alleging that (1) there was no evidence to support Noffke's claim that Bakke was negligent or that his negligence was a substantial factor in causing Noffke's injuries; and (2) Noffke's negligence exceeded his negligence as a matter of law. In an oral ruling, the circuit court denied Bakke's motion for summary judgment on these two bases. We observe that neither party mentions the court's oral ruling on these two issues and we do not address them.

415

statute does not bar her negligence claim against Bakke. As to the school district, Noffke argues the circuit court erred in concluding that no exceptions to the rule of governmental immunity under WIS. STAT. § 893.80(4) applied to the school district, and in concluding that the school district was therefore immune from this lawsuit under § 893.80(4).

¶ 4. We conclude that cheerleading is not a contact sport within the meaning of WIS. STAT. § 895.525(4m) and, therefore, Noffke may proceed with her negligence claim against Bakke. We also conclude that the school district enjoys governmental immunity under WIS. STAT. § 893.80(4) and that, under the facts of this case, no exception applies to expose the school district to liability. We therefore reverse the court's summary judgment order in favor of Bakke and remand for further proceedings, and affirm the court's summary judgment order in favor of the school district.

## BACKGROUND

¶ 5. The pertinent facts are undisputed for purposes of summary judgment. Brittany Noffke was in ninth grade at Holmen High School when she fell and injured her head while practicing a cheerleading stunt on a hard tile floor prior to a high school basketball game. Two other students were involved in the attempted stunt, Kevin Bakke and Hillary Hall.

¶ 6. The three students were attempting a stunt called a "post to hands" or "hands" maneuver, which involves a cheerleader, known as the post, helping lift another cheerleader, called the flyer, onto the shoulders or hands of a third cheerleader, referred to as the base. During this stunt, Noffke was the flyer, Hall was the base, and Bakke was the post and spotter. There were

416

no secondary spotters. No mats were used. Bakke assisted Noffke onto Hall's shoulders. Noffke fell backwards and severely injured her head on the tile floor. Bakke was not positioned behind Noffke when she fell. The coach was supervising another group of cheerleaders while the three students practiced the post to hands stunt, thus her attention was diverted at the time of Noffke's fall.

¶ 7. Noffke sued Bakke and his insurance carrier, alleging negligence for failing to properly spot Noffke. She also sued the school district and their insurer alleging negligence on the part of the cheerleading coach. Specifically, Noffke contended that the coach violated a ministerial duty in failing to ensure proper spotting during the pre-game warm-up stunts, and in failing to ensure that mats were used when the students were practicing a stunt for the first time. Both Bakke and the school district moved for summary judgment. The court granted Bakke's motion on the ground that Wis. Stat. § 895.525(4m) imposed the reckless standard of care to co-participants of contact team sports and that, by application of the statute to the facts of this case, Bakke was immune from Noffke's negligence claim. The court also granted the school district's motion, concluding that the school district enjoyed governmental immunity under Wis. Stat. § 893.80(4) and that no exception to the governmental immunity statute applied to the school district. Noffke appeals.

## STANDARDS OF REVIEW AND PRINCIPLES OF STATUTORY INTERPRETATION

¶ 8. In this case, we review the circuit court's decision granting summary judgment in favor of Bakke and the school district. An appellate court reviews a

417

circuit court's grant of summary judgment de novo, applying the same methodology as the circuit court. *State v. Bobby G.*, 2007 WI 77, ¶ 36, 301 Wis. 2d 531, 734 N.W.2d 81. Summary judgment is appropriate when the affidavits and other submissions show that no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). In evaluating the affidavits and other submissions, we draw all reasonable inferences from the summary judgment materials in the light most favorable to the non-moving party. *Burbank Grease Servs., LLC v. Sokolowski*, 2006 WI 103, ¶ 40, 294 Wis. 2d 274, 717 N.W.2d 781.

¶ 9. This case requires us to determine the meaning of the term "physical contact" in WIS. STAT. § 895.525(4m) and whether cheerleading is a contact sport within the meaning of the statute, a question of statutory interpretation subject to de novo review. *Zellner v. Cedarburg Sch. Dist.*, 2007 WI 53, ¶ 16, 300 Wis. 2d 290, 731 N.W.2d 240. We are also required to construe and apply the governmental immunity statute, WIS. STAT. § 893.80(4), and its exceptions to undisputed facts, which also presents a question of statutory interpretation subject to independent review. *Voss v. Elkhorn Area Sch. Dist.*, 2006 WI App 234, ¶ 12, 297 Wis. 2d 389, 724 N.W.2d 420.

¶ 10. The purpose of statutory interpretation is to give full effect to the policy choices of the legislature. *See State ex rel. Kalal v. Circuit Court*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. To that end, we start by examining the language of the statute to ascertain its plain meaning. *See id.*, ¶¶ 44–45. We give words and phrases their common, ordinary, and accepted meaning, except that technical or specially-

defined or technical words and phrases are given their technical or special definitional meaning. *Id.*, ¶ 45. "[S]tatutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶ 46. We read statutes in a manner that gives reasonable effect to every word, in order to avoid surplusage. *Id.*

¶ 11. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.* (citation omitted). A statute is ambiguous only if reasonably well-informed persons could interpret its meaning in two or more senses. *Id.*, ¶ 47. When the statutory language is ambiguous, we may consult extrinsic sources of interpretation, such as legislative history. *See id.*, ¶ 48. In particular, the title of a statute, although not a part of the statute, may be considered in resolving doubt as to a statute's meaning. *State v. Lindsey A.F.*, 2003 WI 63, ¶ 14, 262 Wis. 2d 200, 663 N.W.2d 757.

## DISCUSSION

*A. Whether Cheerleading Is A Sport Covered By* Wis. Stat. *§ 895.525(4m)*

¶ 12. Noffke sued Bakke alleging that her head injury was caused by Bakke's negligence during the attempted cheerleading stunt. Bakke argues that the suit is barred by Wis. Stat. § 895.525(4m), which provides participants in some amateur sports immunity from tort actions alleging negligence. Noffke maintains

that § 895.525(4m) does not apply because cheerleading is not a "sport" covered by the statute. We agree.

¶ 13. WISCONSIN STAT. § 895.525(4m) limits tort actions against a participant in a "recreational activity" to situations in which the participant causes injury to another by acting "recklessly or with intent to cause injury." Although the term "recreational activity" is broadly defined as meaning "any activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction," § 895.525(2), only a subset of such activities are covered by § 895.525(4m). The activity must involve "physical contact between persons in a sport involving amateur teams." WIS. STAT. § 895.525(4m)(a).[3]

¶ 14. Accordingly, we must determine whether cheerleading is an activity that involves "physical contact between persons in a sport involving amateur teams." WIS. STAT. § 895.525(4m). We assume, without deciding, that Noffke's cheerleading squad is an amateur sports team. Our focus, and the focus of the dispute between the parties, is whether cheerleading involves the sort of physical contact between persons contemplated by the legislature.

¶ 15. The phrase "physical contact between persons in a sport" is not self-defining. Plainly, cheerleaders engage in stunts which involve physical contact with other participants, but is any physical contact

---

[3] Wisconsin Stat. § 895.525(4m)(a), provides in full:

A participant in a recreational activity that includes physical contact between persons in a sport involving amateur teams, including teams in recreational, municipal, high school and college leagues, may be liable for an injury inflicted on another participant during and as part of that sport in a tort action only if the participant who caused the injury acted recklessly or with intent to cause injury.

420

sufficient under the statute? We conclude that the required "physical contact" is ambiguous and, therefore, resort to extrinsic sources.

¶ 16. The only helpful extrinsic sources we have located are the title of the statutory subsection and a dictionary definition of a term used in that title. The title is "Liability of contact sports participants." Although a title is not part of the statute, it may be considered in resolving doubt as to a statute's meaning. *In re Lindsey A.F.*, 262 Wis. 2d 200, ¶ 14. The title's use of the term "contact sports" is significant. The term "contact sport" is normally used to describe sports in which opposing players make aggressive and sometimes injury causing contact, such as football and hockey. Our perception of this term is confirmed by WEBSTER'S NEW COLLEGE DICTIONARY, which defines "contact sport" as "any sport that necessarily involves physical contact between opponents." WEBSTER'S NEW COLLEGE DICTIONARY 314 (2005). This dictionary gives as examples boxing and football.

¶ 17. We acknowledge the obvious. In many ways the risks and the athleticism involved in cheerleading are comparable to those in contact sports. Nonetheless, cheerleading does not fit the commonly accepted meaning of "contact sport." Specifically, it does not involve physical contact *between opponents*.

¶ 18. The supreme court's decision in *Lestina v. West Bend Mutual Insurance Company*, 176 Wis. 2d 901, 501 N.W.2d 28 (1993), supports our conclusion. WISCONSIN STAT. § 895.525(4m) was enacted in response to *Lestina*. In that case, the court considered the appropriate standard of care to apply to a claim brought by a soccer player who was injured by a player from the opposing team. The *Lestina* court held that ordinary negligence was the appropriate standard of care in

Wisconsin governing the conduct of participants in "recreational team contact sports." *Id.* at 913. In so holding, the *Lestina* court rejected decisions from other jurisdictions that applied a recklessness or intentional harm standard of care to participants in contact sports. *Id.* at 905–14.

¶ 19. In dissent, Justice Wilcox argued that the majority's ruling would chill participation in contact sports. *Id.* at 914. He warned that "application of the ordinary negligence standard in personal injury actions arising out of participation in contact sports will discourage vigorous and active participation in sporting events." *Id.* Justice Wilcox noted that the majority's opinion was in conflict with a majority of the jurisdictions addressing this topic, which had "concluded that personal injury cases arising out of athletic events must be predicated on reckless disregard of safety." *Id.* He observed that those other jurisdictions, in adopting the recklessness standard of care, sought to prevent the chilling of "vigorous and active participation in sporting events . . . by the threat of litigation." *Id.* at 918 (quoting *Kabella v. Bouschelle*, 672 P.2d 290, 294 (N.M. Ct. App. 1983)).

¶ 20. Thus, the debate in the 1993 *Lestina* decision was directed at "contact sports" such as soccer. When the legislature acted in 1995 to reverse the *Lestina* decision, it too used the phrase "contact sports." Similarly, an analysis of the Legislative Reference Bureau refers expressly to contact sports, indicating that the "bill requires [the recklessness] standard of care to apply to all ₍participants in *contact sports* involving amateur teams, including teams in recreational . . . [and] high school . . . leagues." Drafting File of 1995 Assembly Bill 628, Legislative Reference Bureau Analysis (emphasis added). Accordingly, we conclude that

422

Wis. Stat. § 895.545(4m) does not bar Noffke's negligence claim against Bakke.

## B. Governmental Immunity

¶ 21. Noffke contends that the school district, as the employer of cheerleading coach Michelle Phillips, was negligent in failing to ensure that Bakke properly spotted Noffke while practicing a cheerleading stunt and in failing to use mats during the pre-game warm up session. The school district asserts that the coach's actions were discretionary and therefore the district is immune from liability under Wis. Stat. § 893.80(4), the governmental immunity statute. Noffke argues in response that two exceptions to § 893.80(4) apply to the school district: (1) the school district had a ministerial duty imposed by law to protect Noffke and other cheerleaders from harm; and (2) a known and compelling danger existed giving rise to that ministerial duty on the part of the cheerleading coach. We conclude that the school district is immune under § 893.80(4), and therefore the circuit court properly granted summary judgment to the school district.

¶ 22. Under Wis. Stat. § 893.80(4), municipalities and their officers and employees are immune from suit for "acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."[4] Collectively, these acts have been "interpreted to include any act that involves the exercise of discretion and judg-

---

[4] Wisconsin Stat. § 893.80(4) provides as follows:

> No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire

ment." *Lodl v. Progressive Northern Ins. Co.*, 2002 WI 71, ¶ 21, 253 Wis. 2d 323, 646 N.W.2d 314. When considering an assertion of the defense of governmental immunity, we "assume[] negligence, focusing instead on whether the municipal action (or inaction) upon which liability is premised is entitled to immunity under the statute, and if so, whether one of the judicially-created exceptions to immunity applies." *Id.*, ¶ 17.

¶ 23. As we explained, Noffke invokes two exceptions to the rule of immunity in this case, both set forth in *Lodl*, 253 Wis. 2d 323, ¶ 24: (1) the exception associated with the performance of a ministerial duty imposed by law; and (2) the "known and compelling danger" exception. Because Noffke fails to make a fully developed argument concerning the known and present danger exception, we address only her argument concerning the ministerial duty exception. *See Kristi L.M. v. Dennis E.M.*, 2007 WI 85, ¶ 20 n.7, 302 Wis. 2d 185, 734 N.W.2d 375 (undeveloped arguments need not be addressed).

¶ 24. A ministerial duty is one that "is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister v. Board of Regents*, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976). Stated differently, a duty is considered ministerial when it has been "positively imposed by law, and its performance required at a time and in a manner, or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent

company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

upon the officer's judgment or discretion." *Lodl*, 253 Wis. 2d 323, ¶ 26 (citation omitted).

¶ 25. Noffke's argument that Phillips breached a ministerial duty and thus exposed the district to liability relies on four rules[5] and one provision[6] of the NFHS Spirit Rules Book relating to safe spotting, which, as noted earlier, the school district has adopted as its rules governing reasonable cheerleading coaching standards and proper cheerleading practices and techniques.[7]

¶ 26. Noffke first argues that the coach failed to provide a "secondary spotter . . . properly behind the stunt." In support, she points to deposition testimony given by the coach, where the coach acknowledged that

---

[5] The following rules are taken from Rule 2–4 of the 2004–05 NFHS Spirit Rules Book:

Art. 1 . . . Spotters are required until a stunt (mount, pyramid, toss, tumbling skill) is mastered.

Art. 2 . . . An inattentive person is not considered a spotter.

Art. 3 . . . A spotter must be in the proper position with arms extended toward the top person's head/shoulders to prevent injuries.

Art. 4 . . . A spotter's torso cannot be under a stunt when a spotter is required.

[6] Under the general heading of "Coaches' Responsibilities," the Spirit Rules provide:

**Spotting**

The active spotter is an integral part of the safety of a program. The spotter is a person who assists in the building of, or dismounting from, a partner stunt or pyramid. The primary responsibility of a spotter is to watch for safety hazards and be in a position to minimize the potential of injury with special emphasis on the head, neck and shoulder areas. Spotters shall not provide **primary** support for others in the performance of a stunt.

[7] We observe that there is something odd about the idea that rules voluntarily adopted by the school district are the sort

secondary spotters are generally provided when cheer-leaders are attempting new stunts. This argument fails because Noffke does not point to any rule that requires a rear spotter.

¶ 27. Noffke also argues that the coach failed to provide a spotter that had the required "characteristics" of a spotter. This argument also fails because the coach did provide a spotter. While we recognize that the spotter (Bakke) failed to properly spot or perform optimally under this specific instance, that does not mean that the coach failed to follow a rule concerning providing a spotter.

¶ 28. Regarding matting, Noffke argues the coach violated a ministerial duty imposed by the Spirit Rules Book by failing to provide mats to the students while attempting to perform the post to hands stunt. Noffke relies on Rule 2–1, Art. 2 of the Spirit Rules Book which provides that "[p]ractice sessions must be held in a location suitable for spirit activities, i.e. appropriate matting . . . ." In Noffke's view, "appropriate matting" cannot mean no matting. We disagree. "Appropriate matting" may in fact mean "no matting" depending on the circumstances. The language of Rule 2–1, Art. 2 plainly requires a coach's independent judgment in determining the circumstances under which matting will be used. In this situation, Noffke was injured while engaged in pre-game warm-ups. The coach testified that, although mats were provided during practice sessions when students were learning new stunts and refining their cheerleading skills, mats were routinely not used during pre-game warm-up sessions and cer-tainly not used during a game.

---

of rules that impose a ministerial duty on the school district. The question that comes to mind is: Can one voluntarily impose a ministerial duty on oneself?

¶ 29. Thus, as we see, the Rules Book plainly does not determine the "time, mode and occasion" for complying with the rule, or impose a duty that "is absolute, certain and imperative" as to leave no room for discretion by a cheerleading coach. *See Lodl*, 253 Wis. 2d 323, ¶ 25. In short, Noffke has not shown that the Spirit Rules Book creates an absolute, certain or imperative duty that fell within the ministerial duty exception to governmental immunity. *Id.*[8]

## CONCLUSION

¶ 30. We conclude that WIS. STAT. § 895.525(4m) does not apply to the facts of this case and Noffke may proceed with her negligence claim against Bakke. We therefore reverse the circuit court's summary judgment order as to Bakke and remand for further proceedings. We also conclude, based on the undisputed facts, that the school district is immune by operation of WIS. STAT. § 893.80(4), because the ministerial duty exception to governmental immunity does not apply to Noffke's negligence claim against the school district. We therefore affirm the court's summary judgment order in favor of the school district. Accordingly, we reverse in part, affirm in part, and remand for further proceedings.

*By the Court.*—Order affirmed; order reversed and cause remanded for further proceedings consistent with this opinion.

---

[8] We observe that Noffke also does not demonstrate or even argue that the 2004–05 Spirit Rules Book has the force of law so as to impose a ministerial duty on the school district. However, the school district does not raise this issue. We therefore do not consider it.