REBECCA FRANK DALLET, J. (concurring).
¶65 This case is about whether the City of New Berlin and the New Berlin Parks and Recreation Department (together, "New Berlin") are entitled to immunity for the negligent acts of their camp staff which resulted in the drowning of eight-year-old Lily. While the majority opinion chooses to expand the narrow exception to immunity carved out for a "known danger," I apply the plain language set forth in Wis. Stat. § 893.80(4) to reach the same result.
¶66 After adopting and applying governmental immunity in Wisconsin for almost a century, in 1962 this court boldly abrogated governmental immunity, declaring it "ancient and fallacious," "archaic," and "unjust, inequitable, and patently unfair." Holytz v. City of Milwaukee, 17 Wis. 2d 26, 33-35, 115 N.W.2d 618 (1962). In the landmark Holytz decision, this court provided clarity in its statement that "henceforward, so far as governmental responsibility for torts is concerned, the rule is liability-the exception is immunity." Id. at 39, 115 N.W.2d 618. An exception to immunity was carved out for a governmental body in the exercise of its "legislative or judicial or quasi-legislative or quasi-judicial functions." Id. at 40, 115 N.W.2d 618.
¶67 The following year, the legislature signaled its approval of the Holytz decision with the enactment of Wis. Stat. § 893.80(4) which provides, in pertinent part, that "[n]o suit may be brought against any ...
*111 governmental subdivision or any agency thereof ... or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions."[1] The language of Holytz and § 893.80(4) advance the original purpose of governmental immunity, which is "to ensure that courts refuse to pass judgment on policy decisions in the province of coordinate branches of government, if such a policy decision, consciously balancing risks and advantages, took place." Legue v. City of Racine, 2014 WI 92, ¶40, 357 Wis. 2d 250, 849 N.W.2d 837.
¶68 Although governmental immunity was intended to be reserved only for government agents or employees in the exercise of their legislative, quasi-legislative, judicial, or quasi-judicial functions, this court soon revived the pre- Holytz distinction between "ministerial duties" and "discretionary acts." See Cords v. Ehly, 62 Wis. 2d 31, 39-41, 214 N.W.2d 432 (1974).
*727 The exercise of a "discretionary act," subject to immunity, is now synonymous with the exercise of a legislative, quasi-legislative, judicial, and quasi-judicial function. Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶25, 235 Wis. 2d 409, 611 N.W.2d 693.
¶69 The artificial distinction between a ministerial duty and discretionary act is impracticable and the resulting decisions regarding the limits of governmental immunity have been labeled "jurisprudential *112 chaos." Scott v. Savers Property and Cas. Ins. Co., 2003 WI 60, ¶58, 262 Wis. 2d 127, 663 N.W.2d 715 (Abrahamson, C.J., concurring).[2] Every act has a discretionary component, such that "[i]t would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail." Id., ¶136 (Prosser, J., dissenting)(citations omitted).
¶70 Far from creating an "evenhanded, predictable, and consistent development of legal principles,"[3] the basis for adherence to stare decisis, the determination that an act is sufficiently discretionary so as to invoke immunity has appeared almost random at times. See, e.g., Lodl v. Progressive N. Ins. Co., 2002 WI 71, 253 Wis. 2d 323, 646 N.W.2d 314 (holding that although the statute at issue described the procedures the officer should use in deciding to manually control traffic, the officer had discretion as to when to perform *113 manual traffic control); Scott, 262 Wis. 2d 127, 663 N.W.2d 715 (holding that a guidance counselor's act of wrongly advising a student that his classes were approved by the NCAA was discretionary, despite the guidance counselor's receipt of clear and unambiguous forms detailing approved and unapproved NCAA courses); Brown v. Acuity, 2013 WI 60, 348 Wis. 2d 603, 833 N.W.2d 96 (holding that a firefighter was liable for running through a red stop signal with his emergency lights activated, but without an audible signal, because he violated a clear ministerial duty). The result of this court's adoption of the pre- Holytz, pre- Wis. Stat. § 893.80(4) language conditioning immunity on the performance of discretionary acts has been a return to governmental immunity as the rule and liability as the exception.
I. THE NARROW KNOWN DANGER EXCEPTION DOES NOT APPLY
¶71 In this case, instead of analyzing whether New Berlin camp staff had a ministerial duty by operation of law, regulation, or governmental policy, the majority opinion concludes that a ministerial duty arose by virtue of a "known danger." To date, the known danger exception has been limited to situations where "there exists a known present danger of such force that *728 the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion." C.L. v. Olson, 143 Wis. 2d 701, 717, 422 N.W.2d 614 (1988). "[T]he danger must be compelling enough that a self-evident, particularized, and nondiscretionary municipal action is required. The focus is on the specific act the public officer or official is alleged to have negligently performed or omitted." Lodl, 253 Wis. 2d 323, ¶40, 646 N.W.2d 314. The *114 known danger exception has been applied in cases where the potential of danger was high and the act required to prevent the danger was clear. See, e.g., Voss ex rel. Harrison v. Elkhorn Area School Dist., 2006 WI App 234, 297 Wis. 2d 389, 724 N.W.2d 420 (known danger exception applied where the hazards of conducting an exercise within the confines of a classroom with a hard tile floor and full of desks was apparent after other students had previously collided with each other and fallen); but cf. C.L., 143 Wis. 2d at 723, 422 N.W.2d 614 (known danger exception did not apply because the potential danger of a parolee attacking a victim did not rise to "such a degree of probability" that the parole agent was deprived of the discretion regarding the manner and level of parole supervision required).
¶72 In order to apply the known danger exception to the case at hand, the majority opinion must necessarily expand the exception to apply in situations where the danger was not necessarily imminent and where there was discretion in how to respond to the potential danger. The majority opinion concludes that the known, compelling danger to Lily as a non-swimmer was that she would drown and that the ministerial duty that arose from the compelling danger was the administration of a swim test. Majority op., ¶6. The known danger exception as previously defined does not apply to the facts of this case.
¶73 First, the danger involved was not compelling and of such force to give rise to a duty to act. Lily's presence at the Wiberg Aquatic Center alone did not present a compelling danger. Stuart Bell, the Playground Coordinator, had taken campers to the Aquatic Center every Tuesday in the summer for twelve years. During that time there were only two incidents in which participants needed lifeguard assistance, with *115 neither incident resulting in injury. On the date of the incident, Aquatic Center lifeguards were on duty, New Berlin camp staff was present, and procedures were in place to allow non-swimmers like Lily to safely enjoy the trip to the Aquatic Center. No one saw Lily near the pool which could have created a compelling danger. As noted by the court of appeals, "[a]ware that Lily could not swim, if Bell had seen her walking right along the edge of a deep area of the pool, this case would be akin to Voss in that a situation would exist that required Bell to take immediate action to stop an 'accident waiting to happen.' " Engelhardt v. City of New Berlin, No. 2016AP801, unpublished slip op., ¶33, 2017 WL 4422369 (Wis. Ct. App. Oct. 4, 2017). While in hindsight Lily's drowning can be said to be an "accident waiting to happen," most cases alleging negligence fit that broad definition.
¶74 Second, there was discretion as to the mode of response. The majority opinion defines the immediate action required to prevent the danger of Lily drowning as a swim test. A swim test would have revealed that Lily could not swim, a fact already known by Bell based on a conversation that he had with Lily's mother the day before the incident. Lily's mother testified at her deposition that after she informed Bell that Lily could not swim, Bell's response was: "That's okay. She can stay in the splash pad area." There were multiple ways that the New Berlin camp *729 staff could have kept Lily safe at the Aquatic Center, such as keeping her at the shallow end of the pool or in the splash pad area, alerting the lifeguards and other camp staff of her inability to swim, having her wear a lifejacket and, most importantly, supervising Lily. There was no one time, mode or occasion for performance to alleviate the risk of Lily drowning. The *116 facts of this case did not present a known, present and compelling danger and there was no "self-evident, particularized, and nondiscretionary" response. Lodl, 253 Wis. 2d 323, ¶40, 646 N.W.2d 314. The known danger exception does not apply.
II. APPLICATION OF WIS. STAT. § 893.80(4)
¶75 Instead of expanding the known danger exception to fit the facts of this case, allowing for broader future use of what was intended to be a "narrow, judicially-created exception," this court should return to an interpretation that is tethered to the text of Wis. Stat. § 893.80(4). Lodl, 253 Wis. 2d 323, ¶4, 646 N.W.2d 314. Returning to the text of § 893.80(4) would not only result in coherency in our jurisprudence, it would also allow redress to innocent victims for wrongs committed by the government.[4] See Melchert v. Pro Electric Contractors, 2017 WI 30, ¶¶63-65, 374 Wis. 2d 439, 892 N.W.2d 710 (R.G. Bradley, J., dissenting).
¶76 This court recently acknowledged that Wis. Stat. § 893.80(4)"is best honored by applying the legislature's chosen plain language, rather than a judicial distillation thereof." Showers Appraisals, LLC v. Musson Bros., 2013 WI 79, ¶35, 350 Wis. 2d 509, 835 N.W.2d 226. This court has been called upon in the past to revisit § 893.80, yet we have been reluctant to *117 do so. See Melchert, 374 Wis. 2d 439, ¶¶52-65, 892 N.W.2d 710 (R.G. Bradley, J., dissenting); Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶136, 350 Wis. 2d 554, 835 N.W.2d 160 (Abrahamson, C.J., dissenting); Scott, 262 Wis. 2d 127, ¶33, 663 N.W.2d 715. The argument for revisiting the standard of governmental immunity has been made and, through amicus briefs, the court has heard from governmental entities and representatives of tort victims. There is no time like the present.
¶77 It is a fundamental principle of statutory construction to presume that the legislature's intent is expressed in the statutory language. State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110. Statutory interpretation begins with the language of the statute. Id., ¶45. "Statutory language is given its common, ordinary, and accepted meaning...." Id. Where the "meaning of the statute is plain, we ordinarily stop the inquiry," and decline to consult extrinsic sources of interpretation. Id. (citations omitted).
¶78 We look then to the common, ordinary and accepted meaning of the words in Wis. Stat. § 893.80(4). The word "legislative" means "[o]f, relating to, or involving lawmaking or the power to enact laws; concerned with making laws." Legislative, Black's Law Dictionary 1039 (10th ed. 2014). The word "judicial" means "[o]f, relating to, or involving a judgment." Judicial, Black's Law Dictionary 974. The word "quasi" means "[s]eemingly but not actually; in some sense or degree; resembling; nearly." Quasi, Black's Law Dictionary *730 1439. A "function" refers to an "[a]ctivity that is appropriate to a particular business or profession." Function, Black's Law Dictionary 787. Taken together, § 893.80(4) provides governmental immunity only for agents or employees of a governmental *118 entity who are engaged in an act that, in some sense or degree, resembles making laws or exercising judgments related to government business.
¶79 Applying the plain language of Wis. Stat. § 893.80(4) to the facts in this case, the New Berlin camp staff was provided with "Staff Guidelines" which set forth the relevant expectations of camp staff as follows: "[i]t is your responsibility to supervise the kids at all times. For example, during weekly swimming field trips you are to actually watch the kids in the water by being in the water with them, or by sitting on the edge of the pool." The guidelines further provided: "[m]ake sure you know where the kids in your care are at all times," and, underlined for emphasis, that "[u]nder no circumstances should kids be left alone."
¶80 While the promulgation of these guidelines would qualify as a "quasi-legislative" activity of New Berlin, and thus New Berlin would receive immunity for legal challenges involving the content of those guidelines, New Berlin is not immune from suit for its camp staff negligently failing to supervise Lily in accordance with the guidelines. The guidelines provided clear instructions to camp staff to "know where the kids in your care are at all times" and "[u]nder no circumstances should kids be left alone." When the New Berlin camp staff failed to supervise Lily as required by the guidelines, they were not making any laws or exercising any judgments related to government business. They cannot be said to have acted in a quasi-legislative or quasi-judicial manner and therefore governmental immunity does not apply.
*119 III. CONCLUSION
¶81 In sum, although I agree with the majority opinion's conclusion that New Berlin is not immune from suit for the negligence of its camp staff, I cannot join the majority opinion because it expands the known danger exception beyond the "narrow, judicially-created exception" to confer immunity in this case. Instead, I return to the plain language of Wis. Stat. § 893.80(4) and conclude that New Berlin is liable for Lily's drowning because the negligent supervision of Lily at the Aquatic Center on July 3, 2012 was not an act done in the exercise of a quasi-legislative or quasi-judicial function.
¶82 For the foregoing reasons, I concur.
¶83 I am authorized to state that Justices REBECCA GRASSL BRADLEY and DANIEL KELLY join this concurrence.

The legislature enacted Wis. Stat. § 331.43, which later became Wis. Stat. § 895.43, which is now Wis. Stat. § 893.80. See Milwaukee Metro. Sewerage Dist. v. City of Milwaukee, 2005 WI 8, ¶¶53-54 & n.13, 277 Wis. 2d 635, 691 N.W.2d 658. However, the pertinent language of the statute has remained unchanged.

While the majority opinion paints a picture of the jurisprudence surrounding governmental immunity as being clear and consistent, quite the contrary is true. See Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2013 WI 78, ¶135, 350 Wis. 2d 554, 835 N.W.2d 160 (Abrahamson, C.J., dissenting) ("Government immunity and liability is a complicated area of jurisprudence with 50 years of Wisconsin case law precedent that is not always easy to explain or justify."). Criticism of this court's interpretation of Wis. Stat. § 893.80(4) is well documented. See, e.g., Melchert v. Pro Electric Contractors, 2017 WI 30, ¶57, 374 Wis. 2d 439, 892 N.W.2d 710 (R.G. Bradley, J., dissenting); see also Nicholas J. Bullard, Comment, Pushing the Reset Button on Wisconsin's Governmental Immunity Doctrine, 2014 Wis. L. Rev. 801.

Payne v. Tennessee, 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) ; Progressive N. Ins. Co. v. Romanshek, 2005 WI 67, ¶43, 281 Wis. 2d 300, 697 N.W.2d 417 ; Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶95, 264 Wis. 2d 60, 665 N.W.2d 257.

As Justice N. Patrick Crooks noted in his concurrence in Showers, the court "must do a better job of striking the balance between too much immunity, which creates a heavy burden for those who suffer harm from negligent government acts, and too much liability, which creates a heavy burden for taxpayers." Showers Appraisals, LLC v. Musson Bros., 2013 WI 79, ¶69, 350 Wis. 2d 509, 835 N.W.2d 226 (Crooks, J., concurring).